21 Civ. 10752 (JSR)(BCM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anthony Marciano, individually, and on behalf of all
other individuals similarly situated,

Plaintiff,

-against-

BILL DE BLASIO, MAYOR OF THE CITY OF NEW
YORK, in his official capacity; DAVE A. CHOCKSHI,
COMMISSIONER OF HEALTH AND MENTAL
HYGIENE, in his official capacity; DERMOT SHEA,
POLICE COMMISSIONER, in his official capacity;
THE NEW YORK CITY BOARD OF HEALTH; and
THE CITY OF NEW YORK,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISSOLVE THE TRO ISSUED IN NEW YORK STATE SUPREME COURT

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Iván A. Méndez, Jr.,*
*Eugenia Fowlkes*
*Tel:  (212) 356-2450*
*Matter No.:  2021-043627*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

             A.    The COVID-19 Pandemic ................................................................. 3

             B.    The City's Response to the Pandemic ............................................... 5

ARGUMENT

             THE TRO SHOULD BE DISSOLVED ....................................................... 9

             A.    The TRO Will Expire on December 28, 2021 ................................... 9

             B. Plaintiff Is Not Entitled to Injunctive Relief………………………...10

                   1.    Applicable Legal Standards ................................................. 10

                   2.    Plaintiff Fails to Meet Even the Less Stringent Prohibitory Injunction Standard ............................. 11

                       a.   There is No Irreparable Harm ........................................... 11

                       b.   Likelihood of Success on the Merits – the DOHMH Order Is Lawful ........................................... 13

                       c.   Likelihood of Success on the Merits – Substantive Due Process ................................................. 19

                       d.   Likelihood of Success on the Merits – Procedural Due Process .................................................. 22

             B.    Balancing of the Equities and the Public Interest ...........................................................................28

CONCLUSION ................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

Abdul Wali v. Coughlin,
    754 F.2d 1015 (2d Cir. 1985)..................................................................................................10

Adams v. Suozzi,
    517 F.3d 124 (2d Cir. 2008)..................................................................................................26

Adrian v. Bd. of Ed.,
    92 A.D.3d 1272 (4th Dep't 2012)....................................................................................24, 25

Almontaser v. N.Y. City Dep't of Educ.,
    519 F.3d 505 (2d Cir. 2008)..................................................................................................11

Amoco Production Co.,
    480 U.S. 531 (1987)..............................................................................................................28

Ansbro v. DeBlasio,
    Index No. 159738/2021 ........................................................................................................21

Broecker et al. v. N.Y. City Dept. of Educ., et al.,
    No. 21 Civ. 6387 (KAM) (RLM)...........................................................................................6

Brown & Williamson Tobacco Corp. v. Engman,
    527 F.2d 1115 (2d Cir. 1975)................................................................................................29

Brown v. Bd. of Educ.,
    2009 N.Y. Misc. LEXIS 5475 (Sup. Ct. N.Y. Co. July 22, 2009)..........................................25

C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
    2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009)...............................................15, 18, 24

C.F. v. New York City Dept. of Health & Mental Hygiene,
    191 A.D.3d 52 (2d Dep't 2020) ............................................................................14, 15, 18, 20

Capul v. City of N.Y.,
    No. 19 Civ. 4313,
    2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27, 2020),
    aff'd 832 Fed. App'x. 766 (2d Cir. 2021)..........................................................................26, 27

Carrabus v. Schneider,
    111 F. Supp. 2d 204 (E.D.N.Y. 2000) ...................................................................................9

Caviezel v. Great Neck Pub. Schs.,
    500 F. App'x 16 (2d Cir. 2012) .............................................................................................20

<u>**Cases**</u>                                                                                      <u>**Pages**</u>

<u>Citibank, N.A. v. Citytrust</u>,
   756 F.2d 273 (2d Cir. 1985)...............................................................................11

<u>City School District v. McGraham</u>,
   17 N.Y.3d 917 (2011) ....................................................................................25

<u>Cleveland Bd. of Educ. v. Loudermill</u>,
   470 U.S. 532 (1985) ......................................................................................27

<u>Cornejo v. Bell</u>,
   592 F.3d 121 (2d Cir. 2010)...........................................................................22

<u>Dechberry v. N.Y.C. Fire Dep't</u>,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) ..........................................................22

<u>Dixon v. De Blasio</u>,
   2021 U.S. Dist. LEXIS 196287 (E.D.N.Y. Oct. 12, 2021)...................................21

<u>Doe v. Zucker</u>,
   20-cv-840 (BKS)(CFH),
   2021 U.S. Dist. LEXIS 28937 (N.D.N.Y. Feb. 17, 2021) ......................................20

<u>Doninger v. Niehoff</u>,
   527 F.3d 41 (2d Cir. 2008)............................................................................11

<u>Ezekwo v. N.Y.C. Health & Hosps. Corp.</u>,
   940 F.2d 775 (2d Cir. 1991)...........................................................................27

<u>Family-Friendly Media, Inc. v. Recorder Tel. Network</u>,
   74 A.D.3d 738 (2d Dep't 2010*)* ...............................................................12

<u>Felix v. Dep't of Citywide Admin. Servs.</u>,
   3 N.Y.3d 498 (2004) .....................................................................................25

<u>Garcia v. N.Y.C. Dep't of Health & Mental Hygiene</u>,
   31 N.Y.3d 601 (2018) ............................................................................15, 16

<u>Garland</u>,
   2021 U.S. Dist. LEXIS 233142 (E.D.N.Y. Dec. 6, 2021). ..............................24

<u>Grand River Enter. Six Nations, Ltd. v. Pryor</u>,
   481 F.3d 60 (2d Cir. 2007)............................................................................13

<u>Hanson Trust PLC v. ML SCM Acquisition, Inc.</u>,
   781 F.2d 264 (2d Cir. 1986)...........................................................................10

**Cases**                                                                                    **Pages**

J.S. v. T'Kach,
   714 F.3d 99 (2d Cir. 2013)...................................................................................22

Jacobson v. Massachusetts,
   197 U.S. 11 (1905)...........................................................................................19

JSG Trading Corp. v. Tray-Wrap, Inc.,
   917 F.2d 75 (2d Cir. 1990)...............................................................................12

Kane v. De Blasio,
   Nos. 21-2678, 21-2711,
   2021 U.S. App. LEXIS 35102 (2d Cir. Nov. 28, 2021).......................................8

Kane v. de Blasio,
   21 Civ. 7863 (VEC) (S.D.N.Y.)........................................................................6

Klaassen v. Trs. of Ind. Univ.,
   No. 21 Civ. 238 (DRL),
   2021 U.S. Dist. LEXIS 133300 (N.D. Ind. July 18, 2021)...................................20

Klaassen v. Trs. of Ind. Univ.,
   7 F.4th 592 (7th Cir. 2021) ...............................................................................20

LaRouche v. Kezer,
   20 F3.d 68 (2d Cir. 1994)..................................................................................11

Maniscalco v. N.Y. City Dept. of Educ.,
   No. 21 Civ. 5055 (E.D.N.Y.) ........................................................................6, 21

Medicrea USA, Inc. v. K2M Spine, Inc.,
   No. 17 Civ. 8677 (AT),
   2018 U.S. Dist. LEXIS 110286 (S.D.N.Y. Feb. 7, 2018).....................................10

Nasso v. Seagal,
   263 F. Supp. 2d 596 (E.D.N.Y. 2003) ..............................................................10

New York State Inspection, Sec. & Law Enforcement Emples.,
   Dist. Council 82 v. Cuomo,
   64 N.Y.2d 233 (1984)........................................................................................23

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
   14 N.Y.3d 275 (2010) ......................................................................................25

O'Connor v. Board of Education,
   48 A.D.3d 1254 (4th Dept. 2008)
   lv. denied 10 N.Y.3d 928 (2008) ..................................................................24, 25

**Cases**                                                                                                          **Pages**

O'Connor v. Pierson,
    426 F.3d 187 (2d Cir. 2005)..........................................................................................27

Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl.
    Relations Bd.,
    6 N.Y.3d 563 (2006) ..............................................................................................17

PBA v. City of NY,
    Index. No. 160674/2021 ..........................................................................................27

Phillips v. City of New York,
    775 F.3d 538 (2d Cir. 2015)................................................................................19, 20

Police Benevolent Assoc. of the City of N.Y. et al. v. de Blasio et al.,
    Index No. 85229/2021 ............................................................................................19

Matter of Rice,
    105 A.D.3d 962 (2d Dep't 2013) ............................................................................12

Roman Cath. Diocese of Brooklyn v. Cuomo,
    141 S. Ct. 63, 208 L. Ed. 2d 206 (2020) (Gorsuch, J., concurring)...................20, 29

Russell v. Coughlin,
    910 F.2d 75 (2d Cir. 1990)......................................................................................27

S.G. Cowen Sec. Corp. v. Messih,
    No 00 Civ. 3228 (HB),
    2000 U.S. Dist. LEXIS 6697 (S.D.N.Y. May 17, 2000),
    affirmed, 224 F.3d 79 (2d Cir. 2000)......................................................................10

Sampson v. Murray,
    415 U.S. 61 (1974)..................................................................................................12

South Bay United Pentecostal Church v Newsom,
    ____ U.S.____, 140 S.Ct. (2021)............................................................................19

Sunset Homeowners Ass'n v. Difrancesco,
    No. 19 Civ. 00016 (EAW),
    2019 U.S. Dist. LEXIS 65057 (W.D.N.Y. Apr. 15, 2019) ....................................10

Taylor v. Taylor,
    No. 12 Civ. 0037 (LEK)(DEP),
    2013 U.S. Dist. LEXIS 39277 (N.D.N.Y. Mar. 21, 2013)....................................10

**Cases**                                                                                        **Pages**

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
   New York, et al.,
   Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ...............................................6, 20

Tom Doherty Assocs. v. Saban Entm't, Inc.,
   60 F.3d 27 (2d Cir. 1995)...........................................................................11, 23

Valentine v. Schembri,
   212 A.D.2d 371 (1st Dep't 1995) ......................................................................12

We the Patriots USA, Inc.,
   Nos. 21-2179, 21-2566,
   2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021)............................................24

Weinberger v. Romero-Barcelo,
   456 U.S. 305 (1982)........................................................................................28

Welch v. Tex. Dep't of Highways & Pub. Transp.,
   483 U.S. 468 (1987).........................................................................................12

Winter v. Natural Res. Def. Council, Inc.,
   555 U.S. 7 (2008)......................................................................................11, 28

Zinermon v. Burch,
   494 U.S. 113 (1990).........................................................................................22

**Statutes**

28 U.S.C. § 1450.....................................................................................................2, 10

42 U.S.C. § 1983..........................................................................................................2

Civil Service Law § 75 ................................................................................................25

Education Law § 3020-a .........................................................................................24, 25

FRCP 65(b) ...........................................................................................................2, 9

FRCP 65(b)(2) ............................................................................................................9

N.Y.C. Admin. Code § 14-115 ................................................................................23, 24

N.Y.C. Admin. Code § 15-113 .....................................................................................24

N.Y.C. Admin. Code § 17-109 ..........................................................................13, 15, 16, 17

N.Y. Labor Law § 27-a ...............................................................................................23

**Statutes**                                                                          **Pages**

NY City Charter § 434.........................................................................................8

NY City Charter § 556.................................................................................13, 15

NY City Charter § 556(c)(2)..........................................................................13

NY City Charter § 558(c) ...............................................................................13

Public Health Law § 206.................................................................................16

Public Health Law § 206 [1] [l] ......................................................................17

Public Health Law § 613.................................................................................16

Public Health Law § 613 [1] [c] ......................................................................17

Public Health Law § [2164] ............................................................................17

Public Health Law § [2165] ............................................................................17

**Other Authorities**

NYC Health Code § 3.01(c)............................................................................14

NYC Health Code § 3.01(d) ......................................................................14, 15

## PRELIMINARY STATEMENT

On October 20, 2021, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), issued an order requiring all City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. on October 29, 2021 (the "DOHMH Order").  The DOHMH Order has been upheld as lawful by both federal and state Courts, in the face of the same claims asserted in the instant case.  Despite this legal precedent supporting the lawfulness of the DOHMH Order, plaintiff Anthony Marciano commenced this proceeding on December 6, 2021, on behalf of himself, and purportedly on behalf of "all other individuals similarly situated" in New York State Supreme Court, New York County, by Order to Show Cause.  Discernible from Plaintiff's rambling and conspiracy-filled complaint are claims that: (1) the DOHMH Commissioner lacked the legal authority to issue the DOHMH order because, among other things, the authority to mandate adult vaccinations lies exclusively with the New York State Legislature; (2) the DOHMH mandate violates the Substantive Due Process Clause of the United States Constitution because it violates his bodily integrity (by "forcing" Plaintiff to receive what Plaintiff derisively refers to as an "experimental" vaccine), and by denying him the right to pursue his chosen profession; and that (3) Plaintiff will be denied Procedural Due Process if he is placed on leave without pay ("LWOP") as a result of his refusal to receive the COVID-19 vaccine.

On December 14, 2021, the Honorable Frank P. Nervo heard arguments concerning Plaintiff's Order to Show Cause which, among other things, requested a temporary restraining order ("TRO") enjoining the City from enforcing the DOHMH Order.  At the conclusion of the hearing, which is discussed in detail in the section below, Justice Nervo issued a TRO enjoining Defendants from implementing the DOHMH Order as to Plaintiff.

The following day, and eight days after Plaintiff commenced this action, Defendants removed this action to this Court on the basis of federal question jurisdiction—here, Plaintiff's Substantive and Procedural Due Process claims which he asserted pursuant to 42 U.S.C. § 1983.  Defendants now move, under 28 U.S.C. § 1450, to dissolve the TRO.

As an initial matter, and pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, the TRO will expire on December 28, 2021.  Should the Court determine that it will not so expire tomorrow, it should dissolve the TRO and refuse to extend it for the simple reason that Plaintiff here has not met any of the requirements for this emergent relief.

Rather than maintaining the status quo, Plaintiff here has sought to alter it—he seeks to halt the continued implementation of the DOHMH Order, which was issued **two months** ago.  Thus, Plaintiff must show a "clear" or "substantial" likelihood of success on the merits— something he has so far failed to demonstrate.  Plaintiff also fails to meet the less stringent standard for a prohibitory injunction, in that he cannot show: (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) that the balance of equities tips decidedly in his favor; and (4) that the public interest weighs in favor of granting an injunction.

Contrary to Plaintiff's arguments, and the NYS Supreme Court's preliminary and erroneous ruling, there was no evidence on the record that Plaintiff, or, indeed, any other NYPD employee, would be irreparably harmed absent the issuance of a TRO.  The NYS Supreme Court's sensationalistic speculation that Plaintiff would be rendered "homeless" in the event the TRO was denied was pure conjecture unsupported by the record.  Even worse, in issuing the TRO, the NYS Supreme Court disregarded well-established precedent holding that pecuniary harm, including a loss of benefits, does not constitute irreparable harm.

Moreover, Plaintiff has failed to show that he is likely to succeed on the merits. As an initial matter, his Due Process claims (both substantive and procedural) have been squarely rejected by every Court that has considered nearly identical claims by other City employees challenging the vaccination mandate. Similarly, Plaintiff's contention that the DOHMH Commissioner lacked authority to issue the order is based on, at best, a misreading of applicable law, and at worst, his intentional obfuscation of controlling statutory and decisional authority. Simply put, Commissioner Chokshi had bona fide authority to issue the DOHMH Order. Plaintiff's selective quoting and misreading of various statutes does not change this result.

Finally, both the balance of the equities and the public interest strongly militate in favor of dissolving the TRO and the continued enforcement of the DOHMH Order. Despite Plaintiff's contention that there is no current public health emergency, both in his papers and during the hearing before Justice Nervo, just a few days ago, the City reached a grim milestone: it recorded over 28,000 new COVID-19 cases, the highest single-day total since the earliest days of the pandemic, and the second highest total in one week. It is against this backdrop that Plaintiff seeks to strip the City of what both the CDC and the City's health experts agree is a critical tool for containing and minimizing the deleterious effects of the COVID-19 virus. Defendants respectfully request that the Court decline to indulge Plaintiff's baseless request, and dissolve the TRO.

## STATEMENT OF FACTS[1]

### A.    The COVID-19 Pandemic

Since February 29, 2020, New York City has experienced over one million residents with a positive COVID-19 diagnosis. See NYC COVID-19 Data and Trends available

---

[1] Unless otherwise noted, all references to "Ex." are to the Exhibits annexed to the Declaration of Iván A. Méndez, Jr., dated December 27, 2021 ("Méndez Decl.").

at https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page, *last accessed* on December 7, 2021.  Tragically, more than 34,000 New York City residents have died due to COVID-19.  Id.

New York City is still battling COVID-19.  Cases are increasing because of the anticipated winter surge, and the number of infections have seen a "vertical increase," in large part due to the Omicron variant.  See Transcript of Governor Hochul's December 20, 2021 Announcement at https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-hochul-announces-comprehensive-winter-surge-plan, *last accessed* on December 22, 2021.  Indeed, Omicron has been urgently classified as a variant of concern.  See NYC COVID-19 Data and Trends available at https://www1.nyc.gov/site/doh/covid/covid-19-data-variants.page, *last accessed* on December 21, 2021.  In less than a month since Omicron was first detected in the United States, it is now predominating the Delta variant; as of December 18, 2021, 73.2% of cases were associated with Omicron.  See CDC Variant Tracker available at https://covid.cdc.gov/covid-data-tracker/#variant-proportions, *last accessed* on December 21, 2021.  In New York state alone, Omicron is responsible for 92% of infections.  See CDC Variant Tracker By Region available at https://covid.cdc.gov/covid-data-tracker/#nowcasting, *last accessed* on December 21, 2021.  As noted in the preliminary statement, the City reached a grim milestone last week—it recorded 28,984 new COVID-19 cases, making it the highest single-day total since the earliest days of the pandemic, and a 30% increase from the previous record set earlier in the week.  See NY Breaks COVID Case Record by 30%, *available* at https://www.nbcnewyork.com/news/coronavirus/ny-breaks-single-day-covid-case-record-for-5th-time-in-week-new-state-data-shows-stark-drop-in-vax-efficacy-vs-infection-not-hospitalization/3464284/, *last accessed* December 23, 2021; see also New York Reports a Record Number of Coronavirus Cases for One Day,

https://www.nytimes.com/2021/12/17/nyregion/covid-new-york-omicron.html, *last accessed* December 22, 2021.

The CDC has stated that vaccination is the most effective tool to prevent the spread of COVID-19 and the development of new variants, as it benefits both vaccine recipients and those with whom they come in contact, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated.  See DOHMH Order, Ex. A.  DOHMH reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New York City.  See id.

In late 2020 and early 2021, three leading vaccines were given emergency authorization in the United States.  Specifically, on December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the first COVID-19 vaccine, the Pfizer-BioNTech COVID-19 vaccine; on December 18, 2020, the FDA issued an EUA for the Moderna COVID-19 vaccine; and on February 27, 2021, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine.  Then, on August 23, 2021, the FDA gave full approval to the Pfizer vaccine.

**B.    The City's Response to the Pandemic**

On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in the City of New York ("the City") to address the threat posed by COVID-19 to the health and welfare of City residents.  See DOHMH Order, Ex. A.  This order remains in effect today.  Id.

Thereafter, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the

continuing threat posed by COVID-19 to the health and welfare of City residents, and recently declared that the public health emergency continues to be in effect.  Id.

On August 24, 2021, the DOHMH Commissioner issued an order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting (hereinafter "DOE Order").  See DOE Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf, last accessed on December 7, 2021.  The DOE Order has been the subject of multiple legal challenges brought in state and federal court, including Broecker et al. v. N.Y. City Dept. of Educ., et al., No. 21 Civ. 6387 (KAM) (RLM); Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ. 5055 (E.D.N.Y.); Kane v. de Blasio, 21 Civ. 7863 (VEC) (S.D.N.Y.); and The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).  In each challenge, the respective Court denied the plaintiffs' application for a temporary restraining order and/or preliminary injunction seeking to enjoin the DOE Order.

On August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test.  See DOHMH Order, Ex. A.  Thereafter, on October 20, 2021, Commissioner Chokshi issued a DOHMH Order requiring COVID-19 vaccination for City employees and certain City contractors.  See DOHMH Order, Ex. A.  The DOHMH Order requires that by 5:00 p.m. on October 29, 2021, City employees must provide proof to the agency or office where they work that:  (1) they have been fully vaccinated against COVID-19; or (2) they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or

(3) they have received the first dose of a two-dose COVID-19 vaccine.  See id.  On November 1, 2021, the New York City Board of Health ("BOH") ratified the DOHMH Order by a unanimous vote.  See BOH November Meeting Transcript, Ex. B, at B.

The DOHMH Order goes on to require that any City employee who has not provided the above-described proof must be excluded from their assigned work location beginning on November 1, 2021.  See DOHMH Order, Ex. A.  Moreover, the DOHMH Order specifically provides that "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law."  Id.

Following the issuance of the DOHMH Order, the City issued a set of Frequently Asked Questions ("FAQs) to address employee concerns regarding the vaccination mandate.  See https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf, *last accessed* on December 7, 2021.  The FAQs provide that, beginning November 1, 2021, City staff who are not in compliance with the vaccine mandate and have not applied for a reasonable accommodation to exempt them from compliance would be placed on Leave Without Pay (LWOP).  Id.  An employee may be immediately removed from LWOP and be restored to payroll by arriving at their assigned work location with proof of one dose of a vaccine.  Id.  However, an employee that continues to refuse to comply with the vaccine mandate and has chosen not to apply for an accommodation may be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement.  Id.

The NYPD Commissioner is empowered by the New York City Charter to "have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department," and the Charter further provides that the Commissioner "shall be chargeable with and responsible for the execution of all laws and the rules

and regulations of the department."  NYC Charter § 434.  Thus, one day after the issuance of the DOHMH Order, on October 21, 2021, the NYPD issued an Administrative Bulletin advising members of the service about the Order, and its requirements.  See Administrative Bulletin, Ex. C. Thereafter, on November 10, 2021, the NYPD Commissioner issued Operations Order 49, which incorporated the requirements of the Executive Order and DOHMH Order, particularly the requirement that NYPD employees who are not in compliance with these orders be placed on LWOP.  See NYPD Operations Order 49, Ex. D.

## C.      Procedural History

Plaintiff commenced this action in New York State Supreme Court, on or about December 6, 2021, and served Defendants with the Complaint, the signed Order to Show Cause, and accompanying papers, the following day.  See ECF Dkt. No. 5.  On December 14, 2021, both parties appeared before Justice Nervo for oral argument concerning Plaintiff's application for a TRO.  At the conclusion of oral argument, Justice Nervo issued an oral decision from the bench granting the TRO.  See TRO Transcript, Ex. E, at 48:13-15.  When asked to clarify as to whom the temporary restraining applied, Justice Nervo declined to do so.  See id. at 48:19-25.  Thus, and given that no class has been certified in this case, the TRO applies only to Plaintiff. See Kane v. De Blasio, Nos. 21-2678, 21-2711, 2021 U.S. App. LEXIS 35102, at *34 (2d Cir. Nov. 28, 2021) (rejecting individual plaintiffs' attempt to obtain class-wide relief without certifying a class, and holding that "[p]laintiffs repeatedly emphasize that they have raised 'facial' challenges as if that permits them to obtain class wide relief without obtaining class certification….Indeed, Plaintiffs' challenge is an end run around the rules governing class certification.").  The following day, on December 15, 2021, Defendants removed this action to the Southern District of New York based

on Plaintiff's federal claims – Counts III and IV of the Complaint, which allege Substantive and Procedural Due Process violations.

## ARGUMENT

### THE TRO SHOULD BE DISSOLVED

**A.    The TRO Will Expire on December 28, 2021**

Rule 65(b)(2) of the Federal Rules of Civil Procedure provides that: "Every temporary restraining order issued without notice … expires at the time after entry—**not to exceed 14 days**—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."  Although the rule refers to TROs entered "without notice," the 14-day time limit has been interpreted to extend to TROs issued by a New York State court on notice.  See Carrabus v. Schneider, 111 F. Supp. 2d 204, 209-12 (E.D.N.Y. 2000).  In Carrabus, the plaintiffs obtained a TRO in New York State Supreme Court enjoining the County of Suffolk from hiring police officers and from using the results of an exam it claimed discriminated against minority police officers.  Id. at 206.  Defendants removed the case to the Eastern District of New York the following day.  Id.  Once the case was removed, Defendants moved to dissolve the TRO, but the Court denied the motion as moot, holding that the TRO was no longer in effect because, under the prior version of Rule 65(b), more than 10 days had elapsed since its issuance.  See id. at 210-11. So, too, here, the TRO issued by Justice Nervo, despite being on notice, should be held to expire 14 days after its issuance, or on December 28, 2021.

**B.**     **Plaintiff Is Not Entitled to Injunctive Relief**

**1.**     <u>Applicable Legal Standards</u>

District courts are empowered by 28 U.S.C. § 1450[2] to dissolve or modify a state

supreme court's order upon removal of an action.  Upon removal, orders that are entered by the

state court are treated as orders entered by the federal court.  See <u>Sunset Homeowners Ass'n v.

Difrancesco</u>, No. 19 Civ. 00016 (EAW), 2019 U.S. Dist. LEXIS 65057, *19 (W.D.N.Y. Apr. 15,

2019) (quoting <u>Nasso v. Seagal</u>, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003)).  Thus, Section 1450

authorizes a federal court to reconsider a state court order that was issued prior to removal.  <u>See</u>

<u>Nasso</u>, 263 F. Supp. 2d at 608.  "On [a] motion to dissolve a temporary restraining order, . . . the

party that obtained the order bears the burden of justifying continued injunctive relief."  <u>Taylor v.

Taylor</u>, No. 12 Civ. 0037 (LEK/DEP), 2013 U.S. Dist. LEXIS 39277, *5 (N.D.N.Y. Mar. 21, 2013)

(quoting <u>S.G. Cowen Sec. Corp. v. Messih</u>, No 00 Civ. 3228 (HB), 2000 U.S. Dist. LEXIS 6697,

*1 (S.D.N.Y. May 17, 2000), <u>affirmed</u>, 224 F.3d 79 (2d Cir. 2000)).  Thus, here, Plaintiff must

show that he is entitled to continued injunctive relief.

A preliminary injunction[3] "is one of the most drastic tools in the arsenal of judicial

remedies."  <u>Hanson Trust PLC v. ML SCM Acquisition, Inc.</u>, 781 F.2d 264, 273 (2d Cir. 1986);

---

[2] 28 U.S.C. § 1450 provides that "[w]henever any action is removed from a State court to a district court of the United States, … [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

[3] The elements of a TRO and a preliminary injunction are indistinguishable.  <u>See, e.g.</u> <u>Medicrea USA, Inc. v. K2M Spine, Inc.</u>, No. 17 Civ. 8677 (AT), 2018 U.S. Dist. LEXIS 110286, *11 (S.D.N.Y. Feb. 7, 2018) (holding that "[a] party seeking a TRO **or** a preliminary injunction must demonstrate: (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for  litigation, (2) irreparable injury in the absence of an injunction, (3) a balance of hardships tips in the plaintiffs favor, and (4) that the TRO would serve the public interest.") (emphasis added).

see Medicrea USA, Inc. v. K2M Spine, Inc., No. 17 Civ. 8677 (AT), 2018 U.S. Dist. LEXIS 110286, *11 (S.D.N.Y. Feb. 7, 2018).   A typical injunction seeks to maintain the status quo pending a trial on the merits.   Abdul Wali v. Coughlin, 754 F.2d 1015 (2d Cir. 1985).   However, here, to the extent that Plaintiff seeks to halt the ongoing implementation of the DOHMH Order, he is required to meet the higher standard of a mandatory injunction, because: (1) the injunction would alter, rather than maintain the status quo, and (2) the injunction would grant Plaintiff substantially all the relief sought.   Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995).   The status quo in a preliminary injunction is the "last, peaceable uncontested status which preceded the pending controversy."   LaRouche v. Kezer, 20 F.3d 68, 74 n.7 (2d Cir. 1994).   Where a party such as Plaintiff seeks a mandatory injunction, they must show a "clear" or "substantial" likelihood of success on the merits.   See Tom Doherty Assocs., 60 F.3d at 33-34.; see also Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

In order to justify a prohibitory injunction, Plaintiff must demonstrate: (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) the balance of equities tips decidedly in their favor; and (4) that the public interest weighs in favor of granting an injunction.   See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); see also Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).   An injunction is unwarranted because Plaintiff cannot demonstrate any of these requirements.

### 2.   Plaintiff Fails to Meet Even the Less Stringent Prohibitory Injunction Standard

#### a.   There is No Irreparable Harm

Of the preliminary injunction requirements, a showing of likely irreparable harm is often referred to as the **most** important.   See Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985).   Here, Plaintiff alleges pecuniary harm from potentially being placed on LWOP.   Yet,

despite being presented with a panoply of caselaw holding that pecuniary harm is not sufficient to

buttress a TRO, Justice Nervo, by citing to his "discretion," shifted the burden to the Defendants

to demonstrate that ***they*** would be irreparably harmed by the issuance of the injunction:

> [Counsel for Defendants] … Loss of employment is not an
> irreparable harm and, thus, should not be the reason why the
> preliminary injunction is granted …
> THE COURT: I understand that, without question. But as a matter
> of discretion, let's say, what harm would there be to the defendants
> in this case were the Court to issue a TRO? And I am aware that's
> not the standard, but I am just asking, what harm would there be to
> the defendants …

TRO Hearing Tr. at 32:23-33:7, Ex. E.  Courts are not permitted to simply exercise "discretion"

in picking and choosing which precedent to follow because, as the Supreme Court has admonished,

"the doctrine of stare decisis is of fundamental importance to the rule of law." Welch v. Tex. Dep't

of Highways & Pub. Transp., 483 U.S. 468, 494 (1987).

Simply put, it is settled federal and New York law that the sort of harm alleged by

Plaintiff here—i.e., pecuniary harm as a result of placement on unpaid leave—is insufficient to

establish irreparable harm.  See, e.g., Sampson v. Murray, 415 U.S. 61, 90 (1974) ("[T]he

temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury

. . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended

in the absence of a stay, are not enough.  The possibility that adequate compensatory or other

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily

against a claim of irreparable harm."); see also JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d

75, 79 (2d Cir. 1990) (same); see also Matter of Rice, 105 A.D.3d 962, 963 (2d Dep't 2013)

("Economic loss, which is compensable by money damages, does not constitute irreparable harm")

(quoting Family-Friendly Media, Inc. v. Recorder Tel. Network, 74 A.D.3d 738, 739 (2d Dep't

2010); see also Valentine v. Schembri, 212 A.D.2d 371, 372 (1st Dep't 1995) (reversing grant of

preliminary injunction because allegations of irreparable harm from loss of health insurance benefits were speculative).

Moreover, it must be stressed that the purported irreparable harm found by Justice Nervo in granting the TRO was entirely speculative.  There is no evidence on the record for any such speculation, that Plaintiff and other unspecified officers—who were not named in the Complaint, and for whom no affidavits were filed in support of the TRO—could find themselves facing: "possible foreclosure on their homes, their children -- of course maybe I am exaggerating to make the point -- and their wife and children to be homeless."  TRO Tr. at 33:2-16, Ex. E.  When this sensationalistic conjecture, devoid of record evidence, was challenged by Defendants' counsel, the Court responded: "***For all we know*** Mr. Marciano could be independently wealthy and in the end the proposition is totally moot."  Id. at 41:20-42:11 (emphasis added).  This is precisely the sort of speculation that cannot, as a matter of law, justify the imposition of injunctive relief.  See Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) ("To satisfy the irreparable harm requirement, **Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent**…") (emphasis added).  Thus, here, the TRO should be dissolved.

**b.  Likelihood of Success on the Merits – the DOHMH Order Is Lawful**

The legal underpinnings of the DOHMH Commissioner and the New York City Board of Health's authority here are clear and unassailable.  The New York City Charter empowers the DOHMH and the BOH with "jurisdiction to regulate all matters affecting health in the city of New York[,]" NY City Charter §§ 556, 558(c), which includes supervising the "control of communicable and chronic diseases and conditions hazardous to life and health," and providing "programs for the prevention and control of disease."  Id. at §§ 556(c)(2), 556(d)(5).  In addition,

Section 17-109 of the Administrative Code empowers DOHMH to "add necessary additional provisions to the health code to most effectively prevent the spread of communicable diseases" and allows DOHMH to "take measures, and supply agents and offer inducements and facilities for general and gratuitous vaccination, disinfection, and for the use of diphtheria antitoxin and other vaccines and antitoxins."  Section 3.01(c) of the New York City Health Code provides that the Department "may take such action as may become necessary to assure the maintenance of public health, the prevention of disease, or the safety of the City and its residents."  Furthermore, Section 3.01(d) of the New York City Health Code, provides, in relevant part, that upon the declaration of a public health emergency, the DOHMH Commissioner "may establish procedures to be followed, issue necessary orders and take such actions as may be necessary for the health or the safety of the City and its residents. Such procedures, orders or actions may include, but are not limited to . . . exercising any other power of the Board of Health to prevent, mitigate, control or abate an emergency, provided that any such exercise of authority or power shall be effective only until the next meeting of the Board, . . . [where] the Board may continue or rescind the Commissioner's . . . exercise of power." Id. These provisions, construed together, lead to the irrefutable conclusion that the DOHMH Commissioner may employ the Board of Health's broad authority during a public health emergency such as the one that the City, and, indeed, the world is experiencing. During this emergency the Commissioner is empowered by that authority to mandate vaccination of New York City government employees.

The Board of Health's authority to mandate adult vaccinations in the City of New York following the declaration of a public health emergency was recently confirmed by the Second Department in C.F. v. New York City Dept. of Health & Mental Hygiene, 191 A.D.3d 52, 64-65 (2d Dep't 2020).   In its decision issued on December 23, 2020, approximately nine months into

the COVID-19 pandemic, the Second Department upheld the adoption by the Board of Health of a mandatory vaccination requirement arising out of a severe measles outbreak in the Brooklyn neighborhood of Williamsburg.   See C.F., 191 A.D.3d at 69 ("The petitioners contend that the Board's … adoption of a mandatory vaccination requirement was irrational, arbitrary, capricious, and an abuse of discretion. We do not agree.").   During oral argument on the TRO, Plaintiff wrongly suggested that C.F. only pertained to the mandatory vaccination of *children*, but this was incorrect.   See C.F. 191 A.D. 3d at 57 (Noting that the measles vaccine mandate applied to "any unvaccinated person older than six months of age who lived or worked within four specified zip codes…") (emphasis added).

Additionally, in C.F., the Second Department recognized the various statutory authorities underpinning the DOHMH Commissioner's authority to mandate vaccinations.   Id. at 64-65 (citing to New York City Charter § 556, and N.Y.C. Admin. Code § 17-109).   In response to this array of authority, Plaintiff erroneously represented to the Court that DOHMH did not present the DOHMH order to the City's Board of Health for a vote, as required by Section 3.01(d) of the New York City Health Code.[1]   See TRO Tr. at 12:7-19. Contrary to Plaintiff's reckless representation, DOHMH did present the DOHMH order to the Board of Health, and the Board of Health ratified it unanimously in accordance with the process described in Section 3.01(d) of the Health Code. See BOH Meeting Tr., at 9:8-24, 20:3-22.   Thus, the Court may dispose of this argument.

---

[1] The relevant language of this provision states that any emergency measures taken by the DOHMH Commissioner to control or abate a public health emergency: "shall be effective only until the next meeting of the Board, which meeting shall be held within five business days of the Commissioner's declaration if a quorum of the Board can be convened within such time period.  If a quorum of the Board cannot be so convened, then said meeting shall be held as soon as reasonably practicable" Id.

Moreover, Petitioner erroneously argued in the Complaint and during oral argument on the TRO, that "[i]nterpreting the Public Health Law to permit the Health Commissioner to mandate the vaccination of adults is not only explicitly prohibited by [Garcia v. N.Y.C. Dep't of Health & Mental Hygiene, 31 N.Y.3d 601 (2018)], but would violate the canons of construction State by the Court of Appeals." See Complaint, ¶ 150; TRO Tr. at 10:1-19, 21:5-15.  Plaintiff's interpretation of Garcia is incorrect.  Garcia did not involve adult vaccinations, nor did it address the DOHMH Commissioner's powers during a public health emergency.  Moreover, Garcia actually plainly supports the Defendants' position that both the DOHMH and Board of Health have been delegated clear authority to require vaccination.  Garcia involved a challenge to the City's requirement that children between the ages of 6 months and 59 months who attend city-regulated childcare or school-based programs receive annual influenza vaccinations.  31 N.Y.3d at 604.  In upholding the requirement, the Court of Appeals found that, "[u]ndisputedly, there [was] a very direct connection between the flu vaccine rules and the preservation of health and safety," and noted that the vaccination requirement does "not relate merely to a personal choice about an individual's own health but, rather, seeks to ensure increased public safety and health for the citizenry by reducing the prevalence and spread of a contagious infectious disease within a particularly vulnerable population."  Id. at 612 (citations omitted).

In Garcia, as in the instant case, the vaccine mandate challengers argued the Board of Health exceeded its regulatory authority and violated the separation of powers doctrine.  Id. at 607-08.  The Court rejected the vaccine mandate challengers' arguments and held that the legislature clearly delegated the authority to adopt vaccination measures to the DOHMH via Administrative Code § 17-109.  Id. at 610-11.  The Court then analyzed whether this delegation of authority violated the separation of powers doctrine, concluding that it did not.  Id. at 616.

With respect to conflict preemption, another argument advanced by Plaintiff here,

(see TRO Tr. at 21:5-15 and Complaint, ¶¶ 20, 134-151), the Court of Appeals held:

> Contrary to petitioners' assertions, the flu vaccine rules also do not
> conflict with Public Health Law §§ 206 and 613. … Notably, the
> language relied on by petitioners—that nothing in the particular
> "subdivision" (Public Health Law § 613 [1] [c]) or "paragraph"
> "shall authorize mandatory immunization of adults or children,
> except as provided in sections [2164] and [2165]" of the Public
> Health Law—was added to those statutes in 2004, and **the
> legislative history reveals no intent to restrict the Board's
> authority to regulate vaccinations** (Public Health Law § 206 [1]
> [l]; see id. § 613 [1] [c]).  Rather, the legislature intended to grant
> NYSDOH authority to oversee voluntary adult immunization
> programs, while ensuring that its grant of authority would not be
> construed as extending to the adoption of mandatory adult
> immunizations … Indeed, by their plain language, these provisions
> simply make clear that the particular statutory subdivisions at issue
> do not authorize NYSDOH to adopt additional mandatory
> immunizations, **but nothing therein prohibits the adoption of
> mandatory immunizations if otherwise authorized by law.**

Id. at 619-20 (emphasis added) (internal citations omitted).  The Court of Appeals then stated the

"state legislature's repeated explicit recognition of the [Board of Health's] independent

vaccination requirements" that derive from Section 17-109 of the NYC Administrative Code,

"originally enacted by the state legislature and 'reflect[ing] the policy of the State that' the Board

has the authority to regulate vaccinations in New York City."  Id. at 620-21 (citing Patrolmen's

Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 N.Y.3d 563,

574 (2006)).  The same is the case here, where the authorities cited by Defendants permit the BOH,

and by extension the DOHMH Commissioner, to adopt such measures as necessary to contain and

abate a public health crisis—in this case, one such measure was the requirement that New York

City employees be vaccinated against COVID-19. Thus, DOHMH lawfully issued the DOHMH

Order; it was neither preempted, nor did it violate the separation of powers doctrine in doing so.

Here, DOHMH's decision to rely on the conclusions of its own public health experts and infectious disease specialists to require vaccinations instead of adopting the suggestions that Plaintiff proposes (concerning natural immunity, or the continuation of the vax-or-test regime) does not, as a matter of law, render the DOHMH Order unlawful or arbitrary.   That Plaintiff scrutinizes the preliminary paragraphs of the DOHMH Order, deeming certain rationales to fit one circumstance but not another, is utterly irrelevant.

The present inflection point for mandating vaccination is bolstered by reputable and reliable public health authorities.  As noted, last week the City recorded over 28,000 new COVID-19 cases in a single day.  Further, the CDC has cited the emergence of "variants of concern" in New York City, more transmissible than earlier variants, and has stated that vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants.  That an earlier concern for variants served to animate the prior health measure of Vax or Test hardly means that, to mandate vaccination now, the DOHMH must show some failure of the prior strategy. Rather, as recognized by the Second Department in C.F., DOHMH "is entitled to a high degree of deference in choosing between reasonable alternatives within its area of expertise."  See C.F.,191 A.D.3d at 68.

Thus, Plaintiff's argument that the City should first demonstrate that the "Vax-or-Test" mandate was inadequate prior to issuing the DOHMH Order, fails.  The law does not require the City of New York to enact inflexible, unchanging measures, which fail to account for the evolving facts on ground, including those pertaining to the highly transmissible COVID-19 variants and the increasing risk to unvaccinated populations.  Indeed, in issuing the DOHMH Order, the City's public health officials continued to calibrate their responsive measure to the public health crisis as it has unfolded, which is precisely what the law and public policy require.

Thus, it logically follows that "respondents are not obliged to ignore data or science . . . Rather, one would expect respondents to avail themselves of as much information as possible" such that they could utilize the "totality of evidence and opinions" to inform their response, "even if some conflicts in data or expert opinions may exist." Police Benevolent Assoc. of the City of N.Y. et al. v. de Blasio et al., Index No. 85229/2021, p. 7 (Sup. Ct. Richmond Cty. Dec. 7, 2021).

### c.  Likelihood of Success on the Merits – Substantive Due Process

Plaintiff's substantive due process arguments pertaining to "bodily integrity" are a nonstarter.  Plaintiff's argument that the DOHMH vaccine order violates substantive due process is foreclosed by the Supreme Court's decision in Jacobson v. Massachusetts, 197 U.S. 11 (1905). There, the plaintiff challenged Massachusetts's compulsory vaccination law under the Fourteenth Amendment.  The Supreme Court held that mandatory vaccination was within the State's police power.  Id. at 25-27.  The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population.  Id. at 38.  Importantly, the controlling authority of Jacobson was recently confirmed by Chief Justice Roberts in his concurring opinion in South Bay United Pentecostal, where he stated: that "Our Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect.  When those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad.  Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." South Bay United Pentecostal Church v Newsom, ____ U.S.____, 140 S.Ct. at 1613-1614 (2021) [Roberts, C. J., concurring][citations omitted]).

The Second Circuit reaffirmed the continuing vitality of Jacobson in Phillips v. City of New York, 775 F.3d 538, 542 (2d Cir. 2015), wherein it held that New York's mandatory vaccine requirement did not violate substantive due process rights because the vaccinations were within the State's police power, and individual liberties did not overcome its judgment that such vaccination was in the interest of the population as a whole.  "Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago."  Id.; see also Caviezel v. Great Neck Pub. Schs., 500 F. App'x 16, 19 (2d Cir. 2012) (summary order) (rejecting substantive due process challenge to vaccination mandate based on Jacobson); see also Doe v. Zucker, 20-cv-840 (BKS/CFH), 2021 U.S. Dist. LEXIS 28937, *83 (N.D.N.Y. Feb. 17, 2021) (rejecting plaintiff's claim that New York State's medical exemptions to mandatory school immunization requirements violated substantive due process rights); see also C.F., 191 A.D. 3d at 69 (holding that the City of New York's measles vaccine mandate did not violate the due process rights secured by the New York State Constitution or the Fourteenth Amendment).

Indeed, courts in New York have recently held that the City's nearly identical vaccine mandate applicable to DOE employees was constitutional and did not implicate a substantive due process right.  See Maniscalco, No. 21-cv-5055 (E.D.N.Y.) and MLC, Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) (relying on Phillips, 775 F.3d at 542.  Since Jacobson, federal courts throughout the country have consistently held that vaccine mandates do not implicate a fundamental right and, accordingly, have applied rational basis review in determining the constitutionality of such mandates.  See, e.g., Klaassen v. Trs. of Ind. Univ., 7 F.4th 592 (7th Cir. 2021); Klaassen v. Trs. of Ind. Univ., No. 21 Civ. 238 (DRL), 2021 U.S. Dist. LEXIS 133300, *62-63 (N.D. Ind. July 18, 2021) (collecting cases) (demonstrating "the consistent use of rational

basis review to assess mandatory vaccination measures," and, in light of "a century's worth of rulings," declining to "extend substantive due process to recognize" a fundamental right to be free from COVID-19 vaccination requirements); see also Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67, 208 L. Ed. 2d 206 (2020) (Gorsuch, J., concurring) (explaining that Jacobson is "essentially . . . rational basis review"); see also Dixon v. De Blasio, 2021 U.S. Dist. LEXIS 196287, *8 (E.D.N.Y. Oct. 12, 2021) (rejecting the plaintiffs' appeal to the right to the "freedom of bodily health and integrity").

These recent decisions, together with a century's worth of federal jurisprudence, demonstrate that the City may mandate vaccinations without violating the due process rights secured by the Constitution.  Plaintiff offers no legal authority to the contrary—as none exists— and instead, curiously cites to United States Supreme Court cases which considered fundamental reproductive rights, and to cases concerning the refusal of medical treatment.  These matters, having no nexus to municipal employment measures to support public health, are wholly inapposite, and should be rejected by the Court.

Finally, Plaintiff's contention that the DOHMH Order deprives him of his right to choose his field of private employment was squarely rejected in both Maniscalco, supra, and on December 21, 2021, the New York State Supreme Court in Ansbro v. DeBlasio, Index No. 159738/2021.  In Maniscalco, Judge Cogan held that even though the vaccine mandate applicable to DOE employees "may ultimately disqualify plaintiffs from employment in their positions at public schools in New York City[,] the Due Process Clause secures the liberty to pursue a calling or occupation, and not the right to a specific job."  Maniscalco, 2021 U.S. Dist. LEXIS 184971, at *6.  The plaintiffs in Maniscalco were not barred from pursuing a teaching career altogether; rather, unvaccinated teachers would have to pursue teaching opportunities outside of the New York City

public school system.   Similarly, in Ansbro, the Petitioner representing FDNY employees, including firefighters, also argued that the DOHMH Order "infringes upon the[ir] right … to engage in their profession and thus implicates a substantive due process violation."   See Ansbro decision, annexed to the Méndez Decl., as Ex. F, at 8.   The Court rejected that argument: "Petitioner's contention that the DOHMH Order infringes upon the right of UFA Members to engage in their profession and thus implicates a substantive due process violation, is not supported by established law. Id. at 8.   As Judge Cogan noted in Maniscalco, "property interests related to employment are not among protected fundamental rights…[n]either is there a fundamental right to continued public employment." Id. at *7.   The reasoning in these cases applies with equal force here.   Plaintiff, should he choose to remain unvaccinated, is free to pursue employment opportunities with other municipal police departments, or in private security companies, or firms that do not have a vaccine mandate.   For this reason, as in Maniscalco and Ansbro, Plaintiff is "not being denied [his] fundamental right to pursue [his] profession." Id.

### d.   Likelihood of Success on the Merits – Procedural Due Process

Plaintiff's procedural due process claim also fails.   In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."   See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).   "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."   Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (emphasis in original) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).   Thus, Plaintiff must "plausibly allege that

he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013).   "[A plaintiff] must first identify a property right[,]" "show that the [government] has deprived him of that right," and "show that the deprivation was effected without due process."  Id. (internal citation and quotation marks omitted).

Here, Plaintiff's specious procedural due process claim is premised on his mistaken belief that the possibility[4] of being placed on LWOP and potentially separated from service as the result of failing to maintain a qualification of employment (here, being vaccinated against COVID-19), implicates the NYPD's disciplinary procedures.  Not so.  Rather, by virtue of Plaintiff's unwillingness to comply with the DOHMH Order, he is simply no longer qualified for his position and is therefore not entitled to any process in advance of his placement on LWOP or separation.

The City, as a government employer, has a duty to maintain a safe workplace.  See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  In the context of the COVID-19 pandemic, federal, state, and local law also confirm that employers can refuse to allow employees to work who are not fit for work under the applicable medical standards set forth by the public health authorities. See e.g. EEOC Guidance, What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, at K.1. (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, *last accessed* Nov. 18, 2021).  The NYPD, consistent with its obligation to provide a safe workplace, and in compliance

---

[4] An allegation that something "may" occur is insufficient to support an application for a preliminary injunction.  Indeed, theoretical harms are purely speculative and therefore cannot support a motion for a preliminary injunction.  See e.g., Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27, 29 (2d Cir. 1995) ("Irreparable harm is an injury that is not remote or speculative but actual and imminent.").

with the lawful DOHMH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform their job functions when they lack fitness to do so under the DOHMH Order.  When employees are not fit to perform their duties under these circumstances, they are not being "suspended"; rather, they are unable to work due to ineligibility caused by their lack of fitness, even where here the ineligibility may be temporary and curable. C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), (citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).

        To be sure, the Second Circuit earlier this month upheld vaccination as a "condition of employment" in the healthcare field.  We the Patriots USA, Inc., Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021).  And, most recently, in Garland, the Court upheld vaccination as a condition of employment for FDNY employees.  Garland v. N.Y.C. Fire Dep't, No. 21-cv-6586 (KAM), 2021 U.S. Dist. LEXIS 233142, at *14 (E.D.N.Y. Dec. 6, 2021).  Critically, the Garland Court concluded that it "need not consider whether section 15-113 of the New York City Administrative Code [the FDNY analogue to N.Y.C. Admin. Code § 14-115] was correctly followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth section 15-113." Id., at *11-12.  Likewise, here, it is also appropriate to require Plaintiff, who, as an NYPD detective is frequently in close proximity to citizens, to be vaccinated as a condition of employment.

Plaintiff's argument that he is entitled to full disciplinary hearings in advance of being placed on LWOP or being ultimately separated is misplaced.  Hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency."  O'Connor, supra at 1255; Adrian v. Bd. of Ed., 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); Brown, supra at *9-10 ("The termination of Petitioner did not implicate the procedural protections of Education Law § 3020-a because Petitioner's termination was due to her legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence on her part.") (citations omitted); Felix v. Dep't of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) (failure to maintain city residency does not trigger the protections of Civil Service Law § 75 because it is a matter of job eligibility, not discipline for misconduct).

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary procedures, from a "qualification of employment," which is not subject to such procedures.  Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011).  Here, the NYPD is enforcing the lawful DOHMH Order by removing unvaccinated employees from the workplace because they are no longer fit to perform their duties.  While this is a new job requirement put in place to combat a novel virus, the analysis does not change.  The NYPD may separate employees that are not in compliance with lawful job requirements.  In essence, Plaintiff seeks to redefine "discipline" to include a failure to meet a qualification of their NYPD employment.  The Courts have repeatedly rejected such attempts.  See, e.g., O'Connor, supra; Adrian, supra; Brown, supra, Felix, supra; Garland, supra.

Thus, a public employer may lawfully, and summarily, separate employees from service due to the employee's legal ineligibility to maintain their employment. Here, the City's Health Commissioner promulgated a lawful eligibility requirement: to be eligible to work for NYPD, an individual must be vaccinated against COVID-19. Plaintiff has not complied with that lawful requirement and is therefore subject to placement on LWOP and separation. Thus, this ineligibility does not implicate the disciplinary procedures delineated in the Patrol Guide or Administrative Code because it does not pertain to misconduct or job performance. Therefore, because Plaintiff no longer meets eligibility requirements, he can be separated from service without the disciplinary procedures delineated in the Patrol Guide or Administrative Code.

Even if Plaintiff could demonstrate that his placement on LWOP and potential separation was somehow "disciplinary" in nature, his procedural due process claim nevertheless fails for several reasons. Here, the collective bargaining agreement governing the terms of Plaintiff's employment, of which he is aware, establishes grievance and arbitration procedures that Plaintiff could use to challenge the so-called "disciplinary actions" taken against him. Thus, his procedural rights are adequately satisfied by the grievance procedures contained in the applicable collective bargaining agreement. See Garland, supra, at *14-15 ("Turning to the issue of whether Plaintiffs' due process rights under the Constitution were violated, the Second Circuit has 'held on several occasions that there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement.'") (quoting Adams v. Suozzi, 517 F.3d 124, 128 (2d Cir. 2008)). The fact that Plaintiff may choose to not utilize such procedures does not change this outcome. Cf. Capul v. City of N.Y., No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020) (holding that City employees' failure to avail themselves

of adequate post-deprivation remedies did not render their procedural due process claims viable),
aff'd 832 Fed. App'x. 766 (2d Cir. 2021).

Second, Plaintiff has been provided with more process than the Constitution
requires, as he had ample notice of the DOHMH Order, and has been provided with a sufficient
opportunity to be heard.   See O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005) (Pre-
deprivation processes "need not be elaborate," and the Constitution "mandates only that such
process include, at a minimum, notice and the opportunity to respond.") (quoting Cleveland Bd.
of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)).   Plaintiff appears to suggest that the
requirements of Due Process are co-extensive with those of the Patrol Guide or Administrative
Code, but "the fact that the State may have specified its own procedures that it may deem adequate
for determining the preconditions to adverse official action . . . does not settle what protection the
federal due process clause requires."   Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990)
(internal quotation marks and citation omitted).   Thus, as Judge Matsumoto correctly observed in
Garland, "at issue is not whether state procedural law was correctly followed or applied, but
whether the process provided satisfies the requirements imposed by the Constitution."   Id. at *11.
To that end, it is well settled that an employee's right to be provided with an opportunity to address
concerns before a final decision is made can be "accomplished through informal procedures; no
formal hearing [is] required."   Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d
Cir. 1991).

Here, the NYPD has more than provided the Constitutional minima.   The NYPD
has in place a robust process for accommodating employees seeking religious or medical
exemptions to the vaccination requirement.   See Dec. 9, 2021 Aff. of Michael Melocowsky
(hereafter "Melocowsky Aff."), submitted in connection with PBA v. City of NY, Index. No.

160674/2021, Ex. G. Thus, Plaintiff may avail himself of the NYPD's established process for seeking a reasonable accommodation to be exempted from the DOHMH Order.[5]  See NYPD Operations Order 79, Ex. D.  Any employee who is granted a reasonable accommodation by the NYPD to be exempt from the DOHMH Order will be restored to NYPD payroll and provided with back pay for the period they were on leave without pay.  Id.  Additionally, employees who are denied a reasonable accommodation by the NYPD to be exempt from the DOHMH Order will be provided with an opportunity to appeal that determination.  Id.

Despite this process, Plaintiff is claiming he is not being provided with constitutionally sufficient due process.  The Court should not countenance such hollow arguments. Accordingly, Plaintiff is unlikely to succeed on his procedural due process claims.

## C.    Balancing of the Equities and the Public Interest

Even if Plaintiff could prove irreparable harm and demonstrate a likelihood of success on the merits – which he cannot – he would, nonetheless, be unable to prove that the balance of the equities tips in his favor.  To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief. Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008).  In exercising their sound discretion, courts should focus on the public consequences in employing the extraordinary remedy of injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of Defendants.  Amid a public health crisis, in which over 800,000 people have lost their lives in the United States alone, with 34,000 of those deaths in New York City, and countless others have become severely ill, certain

---

[5] In fact, this Office has been informed that Plaintiff availed himself of this process by requesting a religious exemption to the vaccination requirement, which makes his denial of due process claim all the more puzzling.

municipal employees have made the personal decision to decline a vaccination that has full FDA approval. In his papers, Plaintiff makes the unsupported assertion that there is seemingly no risk to the public or to other municipal employees if he, and other similarly situated detectives remain unvaccinated. This statement – proffered in service of a thin lawsuit that seeks to upend a validated public safety measure – minimizes the risk of unvaccinated members of service to the very public they are sworn to serve and protect. While Plaintiff may prefer his own lay opinion over those of countless scientists, doctors, government agencies, and regulators, he cannot foist those views on others, certainly not to impede considered public policy during a pandemic, by soliciting the Court to enjoin the vaccine mandate, and thereby jeopardize the health and safety of the public at large.

Against this, Defendants present the compelling – indeed, overwhelming – public interest in limiting the spread of COVID-19 in the community at large. This is a critical juncture for requiring vaccination against COVID-19 given the rise of a troubling new variant. Here, any purported abstract harm to Plaintiff that could result from receiving the COVID-19 vaccine or refusing to get the vaccine despite not having an exemption, does not *decidedly* outweigh the public interest in limiting the spread of COVID-19. See Trump, 943 F.3d at 674.

Courts must also consider whether the granting of the requested relief contravenes the public interest. See Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975). The Supreme Court has recognized that stemming the spread of COVID-19 is a compelling public interest. See Roman Catholic Diocese, 141 S. Ct. at 67. The CDC has acknowledged the threat presented by "variants of concern" and, moreover, has stated that vaccination is an effective tool to prevent the spread of COVID-19 variants and the development of new variants, benefitting both vaccine recipients and those with whom they have contact.

29

Nevertheless, Plaintiff asks this Court to grant the injunction to preserve his private interest in continuing to receive salary and benefits, while ignoring the public interest in mandating vaccination against COVID-19 to reduce its spread.  Plaintiff thus elects to place his own salary and benefits in the public interest and, therefore, deserving of protection.  If granted, an injunction would altogether vitiate the true public interest, by permitting unvaccinated City employees to possibly endanger, through the unchecked spread of COVID-19 and its variants, the public health of fellow employees and citizens of New York City.

Finally, and as acknowledged by the Garland court, "[u]ltimately, it is up to local government, not the courts, to balance the competing public health and business interests[,] and here, the New York City government . . . [has] done so in issuing and enforcing the vaccination requirement for employees of the FDNY." Id. at *26.  For this reason, and the ample reasons cited in this motion, Defendants respectfully request that the Court dissolve the TRO.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dissolve the TRO, and award Defendants such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            December 27, 2021

                              **GEORGIA M. PESTANA**
                              Corporation Counsel of the
                                City of New York
                              Attorney for the Defendants
                              100 Church Street, Room 2-184
                              New York, New York 10007
                              T:  (212) 356-2450
                              E:  imendez@law.nyc.gov

                              By:      _____/s/_____
                                       Iván A. Méndez, Jr.
                                       Assistant Corporation Counsel