Docket No.  21 Civ. 10752 (JSR) (BCM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anthony Marciano, individually, and on behalf of all other individuals similarly situated,

Plaintiff,

-against-

BILL DE BLASIO, MAYOR OF THE CITY OF NEW YORK, in his official capacity; DAVE A. CHOCKSHI, COMMISSIONER OF HEALTH AND MENTAL HYGIENE, in his official capacity; DERMOT SHEA, POLICE COMMISSIONER, in his official capacity; THE NEW YORK CITY BOARD OF HEALTH; and THE CITY OF NEW YORK,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**_GEORGIA M. PESTANA_**
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*
*Of Counsel:  Eugenia Fowlkes*
*Tel.:  (212) 356-2451*
*Matter No.:  2021-043627*

.

Bruce Rosenbaum,
Eugenia Fowlkes,
  Of Counsel.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ........................................................................................................8

      POINT I ....................................................................................................8

           PLAINTIFF LACKS STANDING TO
           CHALLENGE THE DOHMH ORDER ................................................8

      POINT II ...................................................................................................9

           THE DOHMH ORDER IS NOT ULTRA VIRES
           AND IS NOT PREEMPTED BY STATE LAW....................................9

      POINT III................................................................................................16

           PLAINTIFF'S PROCEDURAL DUE PROCESS
           CLAIM MUST BE DISMISSED FOR
           FAILURE TO STATE A PLAUSIBLE CLAIM.................................16

      POINT IV.................................................................................................23

           PLAINTIFF'S SUBSTANTIVE DUE PROCESS
           CLAIM MUST BE DISMISSED FOR
           FAILURE TO STATE A PLAUSIBLE CLAIM.................................23

CONCLUSION....................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adrian v. Bd. of Ed.,
  92 A.D.3d 1272 (4th Dep't 2012), leave to appeal granted, 19 N.Y.3d 804
  (2012) ........................................................................................................ 19

Ansbro v. DeBlasio,
  Index No. 159738/2021 (Sup. Ct. N.Y. Co. December 20, 2021) (Perry, J.) .............. 26, 27

Board of Regents of State Colls. v. Roth,
  408 U.S. 564 (1972) .................................................................................... 16, 23

Broecker, et al. v. N.Y. City Dept. of Educ., et al.,
  No. 21 Civ. 6387 (KAM) (RLM), 2021 U.S. Dist. LEXIS 226848
  (E.D.N.Y. Nov. 24, 2021) .............................................................................. 4

Brown v. Brienen,
  722 F.2d 360 (7th Cir. 1983) ........................................................................ 19

Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
  2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009) ................................. 18

C.F. v. New York City Dept. of Health & Mental Hygiene,
  191 A.D.3d 52 (2d Dep't 2020) ...............................................................*passim*

Capul v. City of N.Y.,
  No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27,
  2020), aff'd, 832 Fed. App'x. 766 (2d Cir. 2021) .......................................... 20

Caviezel v. Great Neck Pub. Schs.,
  500 F. App'x 16 (2d Cir. 2012) .................................................................... 24

City School District v. McGraham,
  17 N.Y.3d 917 (2011) ................................................................................. 19

Crenshaw v. City of New Haven,
  652 Fed. Appx. 58, 60 (2d Cir. 2016) ........................................................... 16

Dixon v. De Blasio,
  No. 21 Civ. 5090 (BMC), 2021 U.S. Dist. LEXIS 196287 (E.D.N.Y. Oct.
  12, 2021) .................................................................................................... 25

Doe v. Zucker,
    20-CV-840, 2021 U.S. Dist. LEXIS 28937 (N.D.N.Y. Feb. 17, 2021) ............................ 24

Ezekwo v. NYC Health & Hosps. Corp.,
    940 F.2d 775 (2d Cir. 1991) ................................................................................. 16, 21

Felix v. Dep't of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) ................................................................................................. 19

Garcia v. N.Y.C. Dep't of Health & Mental Hygiene,
    31 N.Y.3d 601 (2018) ........................................................................................... 12, 13

Garland v. N.Y.C. Fire Dep't,
    No. 21-CV-6586 (KAM), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y. Dec.
    6, 2021) ............................................................................... 18, 19, 20, 21

Jacobson v. Massachusetts,
    197 U.S. 11 (1905) ........................................................................................ 23, 24, 25

Jallow v. City of New York,
    2021 U.S. App. LEXIS 32831 (2d Cir. 2021) ................................................... 23

Kane v. de Blasio,
    Nos. 21 Civ. 7863 & 8773 (VEC), 2021 U.S. Dist. LEXIS 239124
    (S.D.N.Y. Dec. 14, 2021) ............................................................................ 4

Kane v. De Blasio,
    Nos. 21-2678 & 21-2711, 2021 U.S. App. LEXIS 35102 (2d Cir. Nov. 28,
    2021) .............................................................................................. 6

Kentucky Department of Correction v. Thompson,
    490 U.S. 454 (1989), abrogated on other grounds by Sandin v. Conner, 515
    U.S. 472 (1995) ................................................................................... 15

King v. Metroplus Health Plan, Inc.,
    2021 U.S. App. LEXIS 36562 (2d Cir. 2021) ................................................... 23

Klaassen v. Trs. of Ind. Univ.,
    7 F.4th 592 (7th Cir.2021) .................................................................. 25

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ................................................................................ 8

Maniscalco v. N.Y. City Dept. of Educ.,
    No. 21 Civ. 5055 (BMC), 2021 U.S. Dist. LEXIS 184971 (E.D.N.Y. Sep.
    23, 2021), aff'd and remanded, ___ F.4th ___, 2021 U.S. App. LEXIS
    30967 (2d Cir. 2021) ........................................................................ 4, 26, 27

Metro. Bd. of Health v. Heister,
    37 N.Y. 661 (1868) .................................................................................................... 13

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978) ............................................................................................. 22, 23

Matter of N.Y. Statewide Coal. of Hispanic Chambers of Commerce v. N.Y.C.
    Dep't of Health & Mental Hygiene,
    23 N.Y.3d 681 (2014) (Read, J.) (dissenting opinion) .......................................... 9

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council
    82 v. Cuomo,
    64 N.Y.2d 233 (1984) ............................................................................................ 17

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ............................................................................................ 19

O'Connor v. Board of Education,
    48 A.D.3d 1254 (4th Dep't. 2008) lv. denied 10 N.Y.3d 928 (2008) ................... 19

O'Connor v. Pierson,
    426 F.3d 187 (2d Cir. 2005) .................................................................................. 21

Oneida Indian Nation of New York v. Madison County,
    665 F.3d 408 (2d Cir. 2011) .................................................................................. 15

PBA v. City of NY,
    Index. No. 160674/2021 ........................................................................................ 21

Phillips v. City of New York,
    775 F.3d 538 (2d Cir. 2015) .............................................................................. 24, 25

Police Benevolent Assoc. of the City of N.Y., et al. v. de Blasio et al.,
    Index No. 85229/2021 ........................................................................................... 15

Roman Cath. Diocese of Brooklyn v. Cuomo,
    ___ U.S. ___, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020) (Gorsuch, J.,
    concurring) ............................................................................................................. 25

Russell v. Coughlin,
    910 F.2d 75 (2d Cir. 1990) .................................................................................... 21

South Bay United Pentecostal Church v Newsom,
    ____ U.S.____, 140 S. Ct. 1613 (2021) (Roberts, C. J., concurring opinion) ................... 24

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016) ................................................................................................ 8

The New York City Municipal Labor Committee ("MLC"), et al. v. The City
   of New York, et al.,
   Index No. 158368/2021, 2021 N.Y. Misc. LEXIS 5006 (N.Y. Sup., N.Y.
   Cnty. Sep. 29, 2021) (Love, J.) ..................................................................... 4, 25

We the Patriots USA, Inc.,
   Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir.
   2021) ...................................................................................................................... 18

Zahra v. Town of Southfield,
   48 F.3d 674 (2d Cir. 1995) ...................................................................................... 15

**Statutes**

Fourteenth Amendment ............................................................................. 16, 23, 25

Civil Service Law § 75 ...................................................................................... 19

Education Law § 3020-a ................................................................................. 18, 19

Labor Law § 27-a ............................................................................................... 17

**Other Authorities**

DOE Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-
   19-vaccination-requirement-doe.pdf ................................................................. 4

DOHMH Frequently Asked Questions ("FAQs") at
   https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-
   mandate.pdf.............................................................................................................. 5

EEOC Guidance, What You Should Know About Covid-19 and the ADA, the
   Rehabilitation Act, and Other EEO Laws, at K.1 at
   https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-
   ada-rehabilitation-act-and-other-eeo-laws ........................................................ 17

Emergency Executive Order No. 98 ............................................................. 3

Executive Order No. 78 .................................................................................. 4

N.Y.C. Admin. Code § 14- 115 ........................................................................ 18

N.Y.C. Admin. Code § 15-113 ......................................................................... 18

N.Y.C. Admin. Code § 17-109 ............................................................. 9, 10, 12, 13

N.Y. City Charter § 434 .................................................................................. 6

N.Y. City Charter §§ 556, 558(c) ................................................................ 9

NYC COVID-19 Data and Trends available at
https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page ......................................... 2

Transcript of Governor Hochul's December 20, 2021 Announcement at
https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-
governor-hochul-announces-comprehensive-winter-surge-plan ......................................... 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

Anthony Marciano, individually, and on behalf of all other
individuals similarly situated,

                                                Plaintiff,

                      -against-

BILL DE BLASIO, MAYOR OF THE CITY OF NEW
YORK, in his official capacity; DAVE A. CHOCKSHI,
COMMISSIONER OF HEALTH AND MENTAL
HYGIENE, in his official capacity; DERMOT SHEA,
POLICE COMMISSIONER, in his official capacity;
THE NEW YORK CITY BOARD OF HEALTH; and
THE CITY OF NEW YORK,

                                       Defendants.

        No.  21 CV 10752 (JSR) (BCM)

------------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## PRELIMINARY STATEMENT

On October 20, 2021, Dave A. Chokshi,[1] the Commissioner of the New York City

Department of Health and Mental Hygiene ("DOHMH"), issued an order requiring all City

employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. on

October 29, 2021 (the "DOHMH Order").  The DOHMH Order has been upheld as lawful by both

federal and state Courts, in the face of the same claims asserted in the instant case.  Despite this

legal precedent supporting the lawfulness of the DOHMH Order, plaintiff Anthony Marciano

commenced this hybrid proceeding/action on December 6, 2021, on behalf of himself, and

purportedly on behalf of "all other individuals similarly situated" in New York State Supreme

Court, New York County, by Order to Show Cause.  Discernible from Plaintiff's rambling and

---

[1] The DOHMH Commissioner's name is misspelled in the caption as "Dave A. Chockshi."

conspiracy-filled Verified Article 78 Petition and Complaint (hereinafter "Complaint") are claims that: (1) the DOHMH Commissioner lacked the legal authority to issue the DOHMH order because, among other things, the authority to mandate adult vaccinations lies exclusively with the New York State Legislature;[2] (2) the DOHMH mandate violates the Substantive Due Process Clause of the United States Constitution because it violates his bodily integrity (by "forcing" Plaintiff to receive what Plaintiff derisively refers to as an "experimental" vaccine), and by denying him the right to pursue his chosen profession; and that (3) Plaintiff will be denied Procedural Due Process if he is placed on leave without pay ("LWOP") as a result of his refusal to receive the COVID-19 vaccine.  Defendants now move to dismiss the Complaint.  For the reasons set forth in greater detail below, Plaintiff lacks standing to bring the Complaint and the Complaint otherwise fails to state a plausible claim.

## STATEMENT OF FACTS[3]

### A.    The COVID-19 Pandemic

Since February 29, 2020, New York City has experienced nearly two million positive COVID-19 diagnoses.  See NYC COVID-19 Data and Trends available at https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page, *last accessed* on January 17, 2022.  Tragically, more than 34,000 New York City residents have died due to COVID-19.  Id. New York City is still battling COVID-19.  The winter 2021 surge brought about a "vertical increase" in infections, in large part due to the Omicron variant.  See Transcript of Governor

---

[2] Petitioner alternatively characterizes this contention as a violation of separation of powers or preemption.  See Verified Article 78 Petition and Complaint, Dkt. No. 5-1 ¶¶ 235-240 (separation of powers argument), 241-244 (preemption argument).

[3] Unless otherwise noted, all references to "Ex." are to the Exhibits annexed to the Declaration of Eugenia Fowlkes, dated January 19, 2022 ("Fowlkes Decl.").

Hochul's December 20, 2021 Announcement at https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-hochul-announces-comprehensive-winter-surge-plan, *last accessed* on January 17, 2022.

The CDC has stated that vaccination is the most effective tool to prevent the spread of COVID-19 and the development of new variants, as it benefits both vaccine recipients and those with whom they come in contact, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated.  See DOHMH Order, Ex. A.  DOHMH reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New York City.  See id.

In late 2020 and early 2021, three leading vaccines were given emergency authorization in the United States.  Specifically, on December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the first COVID-19 vaccine, the Pfizer-BioNTech COVID-19 vaccine; on December 18, 2020, the FDA issued an EUA for the Moderna COVID-19 vaccine; and on February 27, 2021, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine.  Then, on August 23, 2021, the FDA gave full approval to the Pfizer vaccine.

**B.      The City's Response to the Pandemic**

On March 12, 2020, former Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in the City of New York ("the City") to address the threat posed by COVID-19 to the health and welfare of City residents.  See DOHMH Order, Ex. A.  This order remains in effect today.  Id.

Thereafter, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the

3

continuing threat posed by COVID-19 to the health and welfare of City residents, and recently declared that the public health emergency continues to be in effect.  Id.

On August 24, 2021, the DOHMH Commissioner issued an order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting (hereinafter "DOE Order").  See DOE Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf, last accessed on January 17, 2022.  The DOE Order has been the subject of multiple legal challenges brought in state and federal court, including Broecker, et al. v. N.Y. City Dept. of Educ., et al., No. 21 Civ. 6387 (KAM) (RLM), 2021 U.S. Dist. LEXIS 226848 (E.D.N.Y. Nov. 24, 2021); Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ. 5055 (BMC), 2021 U.S. Dist. LEXIS 184971 (E.D.N.Y. Sep. 23, 2021), aff'd and remanded, ___ F.4th ___, 2021 U.S. App. LEXIS 30967 (2d Cir. 2021); Kane v. de Blasio, Nos. 21 Civ. 7863 & 8773 (VEC), 2021 U.S. Dist. LEXIS 239124 (S.D.N.Y. Dec. 14, 2021); and The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021, 2021 N.Y. Misc. LEXIS 5006 (N.Y. Sup., N.Y. Cnty. Sep. 29, 2021) (Love, J.).  In each challenge, the respective Court denied the plaintiffs' application for a temporary restraining order and/or preliminary injunction seeking to enjoin the DOE Order.

On August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test.  See DOHMH Order, Ex. A.  Thereafter, on October 20, 2021, Commissioner Chokshi issued a DOHMH Order requiring COVID-19 vaccination for City employees and certain City contractors.  See id.  The DOHMH Order requires that by 5:00 p.m. on October 29, 2021,

City employees must provide proof to the agency or office where they work that: (1) they have been fully vaccinated against COVID-19; or (2) they have received a single- dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or (3) they have received the first dose of a two-dose COVID-19 vaccine.  See id.  On November 1, 2021, the New York City Board of Health ("BOH") ratified the DOHMH Order by a unanimous vote.  See BOH November Meeting Transcript, Ex. B, at 22.

The DOHMH Order goes on to require that any City employee who has not provided the above-described proof must be excluded from their assigned work location beginning on November 1, 2021.  See DOHMH Order, Ex. A.  Moreover, the DOHMH Order specifically provides that "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law."  Id.

Following the issuance of the DOHMH Order, the City issued a set of Frequently Asked Questions ("FAQs) to address employee concerns regarding the vaccination mandate.  See https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf,  *last accessed* on January 17, 2022.  The FAQs provide that, beginning November 1, 2021, City staff who are not in compliance with the vaccine mandate and have not applied for a reasonable accommodation to exempt them from compliance would be placed on Leave Without Pay (LWOP).  Id.  An employee may be immediately removed from LWOP and be restored to payroll by arriving at their assigned work location with proof of one dose of a vaccine.  Id.  However, an employee that continues to refuse to comply with the vaccine mandate and has chosen not to apply for an accommodation may be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement.  Id.

The NYPD Commissioner is empowered by the New York City Charter to "have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department," and the Charter further provides that the Commissioner "shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department."  NYC Charter § 434.  Thus, one day after the issuance of the DOHMH Order, on October 21, 2021, the NYPD issued an Administrative Bulletin advising members of the service about the Order, and its requirements.  See Administrative Bulletin, Ex. C. Thereafter, on November 10, 2021, the NYPD Commissioner issued Operations Order 49, which incorporated the requirements of the Executive Order and DOHMH Order, particularly the requirement that NYPD employees who are not in compliance with these orders be placed on LWOP.  See NYPD Operations Order 49, Ex. D.[4]

## C.    Procedural History

Plaintiff commenced this hybrid proceeding/action in New York State Supreme Court, on or about December 6, 2021, and served Defendants with the Complaint, the signed Order to Show Cause, and accompanying papers, the following day.  See ECF Dkt. No. 5.  On December 14, 2021, both parties appeared before Justice Nervo for oral argument concerning Plaintiff's application for a TRO.  At the conclusion of oral argument, Justice Nervo issued an oral decision from the bench granting the TRO.  See TRO Transcript, Ex. E, at 48:13-15.  When asked to clarify as to whom the temporary restraining applied, Justice Nervo declined to do so.  See id. at 48:19-

---

[4] On January 19, 2022, pursuant to litigation in a separate matter, see NYSCEF Doc. No. 49, Police Benevolent Association of the City of New York, Inc., et al. v. Bill DeBlasio, et al., Index No. 160674/2021 (Sup. Ct. N.Y. Co.)(Frank, J.), Justice Frank approved a revised NYPD denial letter to applicants seeking a religious or medical reasonable accommodation request to be exempted from the DOHMH Order.  The revised denial letter includes the specific bases for denying an applicant's reasonable accommodation request to which an applicant may respond on appeal.

25.  Thus, and given that no class has been certified in this case, the TRO applied only to Plaintiff. See Kane v. De Blasio, Nos. 21-2678 & 21-2711, 2021 U.S. App. LEXIS 35102, at *34 (2d Cir. Nov. 28, 2021) (rejecting individual plaintiffs' attempt to obtain class-wide relief without certifying a class, and holding that "[p]laintiffs repeatedly emphasize that they have raised 'facial' challenges as if that permits them to obtain class wide relief without obtaining class certification....Indeed, Plaintiffs' challenge is an end run around the rules governing class certification.").  The following day, on December 15, 2021, Defendants removed this action to the Southern District of New York based on Plaintiff's federal claims – Counts III and IV of the Complaint, which allege Substantive and Procedural Due Process violations.

On December 29, 2021, the parties appeared remotely before Your Honor for oral argument on two motions: (1) Defendants' Motion to Dissolve the TRO issued in New York State Supreme Court; and (2) Plaintiff's Motion to Remand to State Court.  See ECF Dkt Nos. 18 &12, respectively.  From the bench, Your Honor granted Defendants' motion, without prejudice to a renewed application to the Court for a TRO if circumstances change, and denied Plaintiff's motion to sever and remand his state law claims.  See ECF Dkt. No. 23.  The Court then set a briefing scheduling with respect to Defendants' motion to dismiss the Complaint.

Subsequently, on January 13, 2022, Justice Nervo issued a Decision and Order, see Ex. H, in which the Court concluded that it retained jurisdiction over the Complaint, notwithstanding Defendants' removal of the matter to this Court, vacated the previously issued TRO, and dismissed the Complaint finding that the Court was bound by the decision of the Second Department of the Appellate Division of the New York State Supreme Court in C.F. v. New York City Dept. of Health & Mental Hygiene, 191 A.D.3d 52, 64-68 (2d Dep't 2020) (holding that the adoption by the NYC Board of Health of a mandatory vaccination requirement arising out of a

severe measles outbreak in the Brooklyn neighborhood of Williamsburg was within its legislative authority to impose).

## ARGUMENT

### POINT I

### PLAINTIFF LACKS STANDING TO CHALLENGE THE DOHMH ORDER

At the outset, Plaintiff does not have standing to challenge the DOHMH Order. The constitutional minimum of standing is comprised of three elements: (1) Plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and quotations omitted).  As to the first element, the injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized[]; and (b) actual or imminent, not conjectural or hypothetical[.]"  See id. (citations and quotations omitted).  An injury in fact requires more than some injury to a "cognizable interest[,] [it] requires that [the plaintiff challenging the action complained of] be himself among the injured."  See id., p. 563.  However, where there is no actual harm, plaintiff must at the very least establish imminent harm.  See id., p. 564.  At the pleading stage, the plaintiff must "clearly [] allege facts demonstrating each [of these three elements]."  See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citation and quotation omitted).

Here, Plaintiff has no standing to challenge the DOHMH Order because he has not suffered a concrete injury, thereby failing to show an injury in fact, the "first and foremost of standing's three elements."  See Spokeo, 578 U.S. at 338-39 (quoting Steel Co. v. Citizens for

<u>Better Environment</u>, 523 U.S. 83, 103 (1998)).  A concrete injury must be *de facto*, i.e., it must actually exist. <u>See</u> <u>Spokeo</u>, 578 U.S. at 340 (citing Black's Law Dictionary 506 (10th Ed. 2014)).

As an initial matter, Plaintiff has not alleged any harm—only potential future harm. Nowhere in Plaintiff's 57-page Complaint does he allege that he has actually been harmed by the DOHMH Order.  Rather, Plaintiff frames his harm as being forced to choose "between the deprivation of his substantive due process right to bodily integrity, and the deprivation of his property right in continued civil service employment[.]" <u>See</u> Complaint, ECF Dkt. No. 5-1, ¶ 249. First, as explained below in Points III and IV, Plaintiff's due process rights are not implicated in this case.  Plaintiff's claims are premised on his mistaken belief that the possibility of being placed on LWOP and potentially separated from service as a result of failing to maintain a qualification of employment (here, being vaccinated against COVID-19), implicates the NYPD's disciplinary procedures.[5]  Thus, absent pleadings articulating an actual harm, Plaintiff has not plausibly alleged an injury in fact sufficient to permit him to challenge the DOHMH Order.

<div align="center">

**POINT II**

**THE DOHMH ORDER IS NOT ULTRA VIRES<br>AND IS NOT PREEMPTED BY STATE LAW**

</div>

The legal underpinnings of the DOHMH Commissioner and the New York City Board of Health's authority here are clear and unassailable.  The New York City Charter empowers the DOHMH and the BOH with "jurisdiction to regulate all matters affecting health in the city of New York[,]" <u>See</u> NY City Charter §§ 556, 558(c), which includes supervising the "control of communicable and chronic diseases and conditions hazardous to life and health," and providing

---

[5] In response to Your Honor's inquiry during the December 29, 2021 oral argument in this case, Plaintiff's counsel advised the Court that Plaintiff has applied for a religious accommodation.  <u>See</u> ECF Dkt. No. 24, Oral Argument Tr., at 17:4-11.  Plaintiff's request is still pending and he has not been placed on LWOP or lost any job-related benefits as a result of his failure to be vaccinated.

"programs for the prevention and control of disease." Id. at §§ 556(c)(2), 556(d)(5). See also discussion of the historical basis of the broad authority of DOHMH and BOH in Matter of N.Y. Statewide Coal. of Hispanic Chambers of Commerce v. N.Y.C. Dep't of Health & Mental Hygiene, 23 N.Y.3d 681, 704-711 (2014) (Read, J.) (dissenting opinion).

　　　　　In addition, Section 17-109 of the Administrative Code empowers DOHMH to "add necessary additional provisions to the health code to most effectively prevent the spread of communicable diseases" and allows DOHMH to "take measures, and supply agents and offer inducements and facilities for general and gratuitous vaccination, disinfection, and for the use of diphtheria antitoxin and other vaccines and antitoxins." See Section 3.01(c) of the New York City Health Code provides that the Department "may take such action as may become necessary to assure the maintenance of public health, the prevention of disease, or the safety of the City and its residents." Furthermore, Section 3.01(d) of the New York City Health Code, provides, in relevant part, that upon the declaration of a public health emergency, the DOHMH Commissioner "may establish procedures to be followed, issue necessary orders and take such actions as may be necessary for the health or the safety of the City and its residents. Such procedures, orders or actions may include, but are not limited to . . . exercising any other power of the Board of Health to prevent, mitigate, control or abate an emergency, provided that any such exercise of authority or power shall be effective only until the next meeting of the Board, . . . [where] the Board may continue or rescind the Commissioner's . . . exercise of power." Id. These provisions, construed together, lead to the irrefutable conclusion that the DOHMH Commissioner may employ the Board of Health's broad authority during a public health emergency such as the one that the City, and, indeed, the world is experiencing. During this emergency the Commissioner is empowered by that authority to mandate vaccination of New York City government employees.

The Board of Health's authority to mandate adult vaccinations in the City of New York following the declaration of a public health emergency was recently confirmed by the Second Department in <u>C.F. v. New York City Dept. of Health & Mental Hygiene</u>, 191 A.D.3d 52, 64-65 (2d Dep't 2020).  In its decision issued on December 23, 2020, approximately nine months into the COVID-19 pandemic, the Second Department upheld the adoption by the Board of Health of a mandatory vaccination requirement arising out of a severe measles outbreak in the Brooklyn neighborhood of Williamsburg.  <u>See</u> <u>C.F.</u>, 191 A.D.3d at 69 ("The petitioners contend that the Board's ... adoption of a mandatory vaccination requirement was irrational, arbitrary, capricious, and an abuse of discretion. We do not agree.").  During oral argument on the TRO, Plaintiff wrongly suggested that <u>C.F.</u> only pertained to the mandatory vaccination of *children*, but this was incorrect.  <u>See</u> <u>C.F.</u> 191 A.D. 3d at 57 (Noting that the measles vaccine mandate applied to "any unvaccinated person older than six months of age who lived or worked within four specified zip codes...") (emphasis added).[6]

Additionally, in <u>C.F.</u>, the Second Department recognized the various statutory authorities underpinning the DOHMH Commissioner's authority to mandate vaccinations.  <u>Id.</u> at 64-65 (citing to New York City Charter § 556, and N.Y.C. Admin. Code § 17-109).  In response to this array of authority, Plaintiff erroneously represented to the Court that DOHMH did not present the DOHMH order to the City's Board of Health for a vote, as required by Section 3.01(d) of the New York City Health Code.[7]  <u>See</u> TRO Tr. at 12:7-19.  Contrary to Plaintiff's reckless

---

[6] Indeed, as noted above, Justice Nervo ultimately found the Second Department's decision in <u>C.F.</u> dispositive of the issue before the Court.

[7] The relevant language of this provision states that any emergency measures taken by the DOHMH Commissioner to control or abate a public health emergency: "shall be effective only until the next meeting of the Board, which meeting shall be held within five business days of the Commissioner's declaration if a quorum of the Board can be convened within such time period.

representation, DOHMH did present the DOHMH order to the Board of Health, and the Board of Health ratified it unanimously in accordance with the process described in Section 3.01(d) of the Health Code.  See BOH Meeting Tr., at 9:8-24, 20:3-22.  Thus, the Court may dispose of this argument.

Moreover, Petitioner erroneously contends in the Complaint, and argued during oral argument in this Court on the TRO, that "[i]nterpreting the Public Health Law to permit the Health Commissioner to mandate the vaccination of adults is not only explicitly prohibited by [Garcia v. N.Y.C. Dep't of Health & Mental Hygiene, 31 N.Y.3d 601 (2018)], but would violate the canons of construction State by the Court of Appeals."  See Complaint, ECF Dkt. No. 5-1, ¶ 150; see also ECF Dkt. No. 24, TRO Tr. at 10:1-19, 21:5- 15.  Plaintiff's interpretation of Garcia is incorrect.  Garcia did not involve adult vaccinations, nor did it address the DOHMH Commissioner's powers during a public health emergency.  Moreover, Garcia actually plainly supports the Defendants' position that both the DOHMH and Board of Health have been delegated clear authority to require vaccination.  Garcia involved a challenge to the City's requirement that children between the ages of 6 months and 59 months who attend city-regulated childcare or school-based programs receive annual influenza vaccinations.  31 N.Y.3d at 604.  In upholding the requirement, the Court of Appeals found that, "[u]ndisputedly, there [was] a very direct connection between the flu vaccine rules and the preservation of health and safety," and noted that the vaccination requirement does "not relate merely to a personal choice about an individual's own health but, rather, seeks to ensure increased public safety and health for the citizenry by reducing

---

If a quorum of the Board cannot be so convened, then said meeting shall be held as soon as reasonably practicable"  Id.

the prevalence and spread of a contagious infectious disease within a particularly vulnerable population." Id. at 612 (citations omitted).

In Garcia, as in the instant case, the vaccine mandate challengers argued the Board of Health exceeded its regulatory authority and violated the separation of powers doctrine. Id. at 607-08. The Court rejected the vaccine mandate challengers' arguments and held that the legislature clearly delegated the authority to adopt vaccination measures to the DOHMH via Administrative Code § 17-109. Id. at 610-11. The Court then analyzed whether this delegation of authority violated the separation of powers doctrine, concluding that it did not. Id. at 616. With respect to conflict preemption, another argument advanced by Plaintiff here, (see TRO Tr. at 21:5-15 and Complaint, ECF Dkt. No. 5-1, ¶¶ 20, 134-151), the Court of Appeals held:

> Contrary to petitioners' assertions, the flu vaccine rules also do not conflict with Public Health Law §§ 206 and 613. ... Notably, the language relied on by petitioners—that nothing in the particular "subdivision" (Public Health Law § 613 [1] [c]) or "paragraph" "shall authorize mandatory immunization of adults or children, except as provided in sections [2164] and [2165]" of the Public Health Law—was added to those statutes in 2004, and **the legislative history reveals no intent to restrict the Board's authority to regulate vaccinations** (Public Health Law § 206 [1] [l]; see id. § 613 [1] [c]). Rather, the legislature intended to grant NYSDOH authority to oversee voluntary adult immunization programs, while ensuring that its grant of authority would not be construed as extending to the adoption of mandatory adult immunizations ... Indeed, by their plain language, these provisions simply make clear that the particular statutory subdivisions at issue do not authorize NYSDOH to adopt additional mandatory immunizations, **but nothing therein prohibits the adoption of mandatory immunizations if otherwise authorized by law.**

Garcia, 31 N.Y.3d at 619-20 (emphasis added) (internal citations omitted). The Court of Appeals then stated the "state legislature's repeated explicit recognition of the [Board of Health's] independent vaccination requirements" that derive from Section 17-109 of the NYC Administrative Code, was "originally enacted by the state legislature and 'reflect[s] the policy of the State that' the Board has the authority to regulate vaccinations in New York City." Id. at 620-21 (citing Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 N.Y.3d 563, 574 (2006)); see also Metro. Bd. of Health v. Heister, 37 N.Y. 661, 670 (1868) (holding "from the earliest organization of the government, the absolute control over persons and property, so far as the public health was concerned, was vested in boards or officers, who exercised a summary jurisdiction over the subject, and who were not bound to wait the slow course of the law, . . . . The governor, the mayor, health officers under various names, were the persons intrusted with the execution of this important public function; and they were always empowered to act in a summary manner."). The same is the case here, where the authorities cited by Defendants permit the BOH, and by extension the DOHMH Commissioner, to adopt such measures as necessary to contain and abate a public health crisis—in this case, one such measure was the requirement that New York City employees be vaccinated against COVID-19. Thus, DOHMH lawfully issued the DOHMH Order; it was neither preempted, nor did it violate the separation of powers doctrine in doing so.

      Here, DOHMH's decision to rely on the conclusions of its own public health experts and infectious disease specialists to require vaccinations instead of adopting the suggestions that Plaintiff proposes (concerning natural immunity, or the continuation of the vax-or-test regime) does not, as a matter of law, render the DOHMH Order unlawful or arbitrary. That

14

Plaintiff scrutinizes the preliminary paragraphs of the DOHMH Order, deeming certain rationales to fit one circumstance but not another, is utterly irrelevant.

The present inflection point for mandating vaccination is bolstered by reputable and reliable public health authorities.  The CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants.  That an earlier concern for variants served to animate the prior health measure of Vax or Test hardly means that, to mandate vaccination now, the DOHMH must show some failure of the prior strategy.  Rather, as recognized by the Second Department in C.F., DOHMH "is entitled to a high degree of deference in choosing between reasonable alternatives within its area of expertise."  See C.F.,191 A.D.3d at 68.

Thus, Plaintiff's argument that the City should first demonstrate that the "Vax-or-Test" mandate was inadequate prior to issuing the DOHMH Order, fails.  The law does not require the City of New York to enact inflexible, unchanging measures, which fail to account for the evolving facts on ground, including those pertaining to the highly transmissible COVID-19 variants and the increasing risk to unvaccinated populations.  Indeed, in issuing the DOHMH Order, the City's public health officials continued to calibrate their responsive measure to the public health crisis as it has unfolded, which is precisely what the law and public policy require.

Thus, it logically follows that Defendants "are not obliged to ignore data or science . . . Rather, one would expect [defendants] to avail themselves of as much information as possible" such that they could utilize the "totality of evidence and opinions" to inform their response, "even if some conflicts in data or expert opinions may exist."  Police Benevolent Assoc. of the City of N.Y., et al. v. de Blasio et al., Index No. 85229/2021, p. 7 (Sup. Ct. Richmond Cty. Dec. 7, 2021).

## POINT III

### PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A PLAUSIBLE CLAIM

**A.**     **Applicable Standard**

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  See Kentucky Department of Correction v. Thompson, 490 U.S. 454, 460 (1989), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, 484 (1995).  Thus, a valid claim of deprivation of procedural due process under Section 1983 requires Plaintiff to establish the threshold issue of showing that he possessed a liberty or property interest in the benefit or right of which he alleges he was deprived.  See Oneida Indian Nation of New York v. Madison County, 665 F.3d 408, 427-28 (2d Cir. 2011); see also Zahra v. Town of Southfield, 48 F.3d 674, 689 (2d Cir. 1995).

Property interests are not created by the Constitution.  Rather, they are created, "and their dimensions are defined" by existing rules promulgated by independent sources, such as state law, or collective bargaining agreements ("CBA").  See Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  The courts must look to federal constitutional law to determine whether that property interest rises to the level of a "legitimate claim of entitlement protected by the Due Process Clause."  See Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 782 (2d Cir. 1991).  Indeed, it is well settled that procedural due process requirements only apply where an individual is deprived of a liberty or property interest that is protected by the Fourteenth Amendment.  See Roth, 408 U.S. at 569.  Thus, in the Court's determination as to which interests are afforded such protection, the court must "look to whether the interest involved would be protected under state

16

law[.]"  See id. Ezekwo, 940 F.2d at 783 (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir. 1983)).  To set forth a claim for deprivation of a property interest, a plaintiff must have a property interest in a benefit that is "more than an abstract need or desire for it … he must, instead, have a legitimate claim of entitlement to it" under state or federal law in order to plausibly state a § 1983 claim.  See Crenshaw v. City of New Haven, 652 Fed. Appx. 58, 60 (2d Cir. 2016) (citations and quotations omitted).

**B.      Plaintiff Has Not Plausibly Alleged A Procedural Due Process Violation**

Here, Plaintiff's claimed protected property interest is nowhere to be found.  Plaintiff alleges, without merit, that the DOHMH Order, as well as Police Commissioner Shea's adoption and implementation of the DOHMH Order, violate Plaintiff's right to procedural due process.  See ECF Dkt. No. 5-1, ¶ 251.  Plaintiff mischaracterizes the DOHMH Order as an infringement on his right to continued employment.  See id. at ¶ 252.  Plaintiff then doubles down by additionally mischaracterizing the NYPD's enforcement of the DOHMH Order as punishment that is "intended to cause humiliation and financial hardship, [a] clearly [] disciplinary action subject to procedural due process" protections.  See id. at ¶ 253.  Neither of Plaintiff's claims are supported by well-established law.

Notwithstanding the fact that the DOHMH Order has continued to be upheld in the numerous challenges brought before the federal and state courts, the NYPD's enforcement of the DOHMH Order is not discipline, and thus does not subject Plaintiff to any of his alleged procedural due process protections.  Plaintiff's specious procedural due process claim is premised on his mistaken belief that the possibility of being placed on LWOP and potentially separated from service as the result of failing to maintain a qualification of employment (here, being vaccinated against COVID- 19) implicates the NYPD's disciplinary procedures.  Not so.  Rather, by virtue of Plaintiff's unwillingness to comply with the DOHMH Order, he is simply no longer qualified for

his position and is therefore not entitled to any process in advance of his placement on LWOP or separation.

The City, as a government employer, has a duty to maintain a safe workplace.  See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  In the context of the COVID-19 pandemic, federal, state, and local law also confirm that employers can refuse to allow employees to work who are not fit for work under the applicable medical standards set forth by the public health authorities.  See e.g. EEOC Guidance, What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, at K.1. (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, *last accessed* January 17, 2022).  The NYPD, consistent with its obligation to provide a safe workplace, and in compliance with the lawful DOHMH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform their job functions when they lack fitness to do so under the DOHMH Order.  When employees are not fit to perform their duties under these circumstances, they are not being "suspended"; rather, they are unable to work due to ineligibility caused by their lack of fitness, even where here the ineligibility may be temporary and curable.  C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), (citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dep't. 2008) lv. denied 10 N.Y.3d 928 (2008)) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).

The Second Circuit has upheld vaccination as a "condition of employment" in the healthcare field.  See We the Patriots USA, Inc., Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS

32880, at *52-53 (2d Cir. Nov. 4, 2021).  And in Garland v. N.Y.C. Fire Dep't, No. 21-cv-6586 (KAM), 2021 U.S. Dist. LEXIS 233142, at *14 (E.D.N.Y. Dec. 6, 2021), the Court upheld vaccination as a condition of employment for FDNY employees.  Critically, the Garland Court concluded that it "need not consider whether section 15-113 of the New York City Administrative Code [the FDNY analogue to N.Y.C. Admin. Code § 14- 115] was correctly followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth [in] section 15-113."  Id., at *11-12. Likewise, here, it is also appropriate to require Plaintiff—an NYPD detective who is frequently in close proximity to citizens—to be vaccinated as a condition of employment.

Plaintiff's argument that he is entitled to full disciplinary hearings in advance of being placed on LWOP or being ultimately separated is misplaced.  Hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency."  O'Connor, supra at 1255; Adrian v. Bd. of Ed., 92 A.D.3d 1272, 1273 (4th Dep't 2012), leave to appeal granted, 19 N.Y.3d 804 (2012); Brown, supra at *9-10 ("The termination of Petitioner did not implicate the procedural protections of Education Law § 3020-a because Petitioner's termination was due to her legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence on her part.") (citations omitted); Felix v. Dep't of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) (failure to maintain city residency does not trigger the protections of Civil Service Law § 75 because it is a matter of job eligibility, not discipline for misconduct).

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary

procedures, from a "qualification of employment," which is not subject to such procedures.  <u>See</u> <u>Matter of New York State Off. of Children & Family Servs. v. Lanterman</u>, 14 N.Y.3d 275, 282 (2010); <u>see</u> <u>also</u> <u>City School District v. McGraham</u>, 17 N.Y.3d 917, 918 n.1 (2011).  Here, the NYPD is enforcing the lawful DOHMH Order by removing unvaccinated employees from the workplace because they are no longer fit to perform their duties.  While this is a new job requirement put in place to combat a novel virus, the analysis does not change.  The NYPD may separate employees that are not in compliance with lawful job requirements.  In essence, Plaintiff seeks to redefine "discipline" to include a failure to meet a qualification of their NYPD employment.  The Courts have repeatedly rejected such attempts.  <u>See</u>, <u>e.g.</u>, <u>O'Connor</u>, <u>supra</u>; <u>Adrian</u>, <u>supra</u>; <u>Brown</u>, <u>supra</u>; <u>Felix</u>, <u>supra</u>; <u>Garland</u>, <u>supra</u>.

Thus, a public employer may lawfully, and summarily, separate employees from service due to the employee's legal ineligibility to maintain their employment.  Here, the City's Health Commissioner promulgated a lawful eligibility requirement: to be eligible to work for NYPD, an individual must be vaccinated against COVID-19.  Plaintiff has not complied with that lawful requirement and is therefore subject to placement on LWOP and separation.  Thus, this ineligibility does not implicate the disciplinary procedures delineated in the Patrol Guide or Administrative Code because it does not pertain to misconduct or job performance.  Therefore, because Plaintiff no longer meets eligibility requirements, he can be separated from service without the disciplinary procedures delineated in the Patrol Guide or Administrative Code.

Even if Plaintiff could demonstrate that his placement on LWOP and potential separation was somehow "disciplinary" in nature, his procedural due process claim nevertheless fails for several reasons.  Here, the collective bargaining agreement governing the terms of Plaintiff's employment, of which he is aware, establishes grievance and arbitration procedures that

Plaintiff could use to challenge the so-called "disciplinary actions" taken against him.  Thus, his procedural rights are adequately satisfied by the grievance procedures contained in the applicable collective bargaining agreement.  See Garland, supra, at *14-15 ("Turning to the issue of whether Plaintiffs' due process rights under the Constitution were violated, the Second Circuit has 'held on several occasions that there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement.'") (quoting Adams v. Suozzi, 517 F.3d 124, 128 (2d Cir. 2008)).  The fact that Plaintiff may choose to not utilize such procedures does not change this outcome.  Cf. Capul v. City of N.Y., No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020) (holding that City employees' failure to avail themselves of adequate post-deprivation remedies did not render their procedural due process claims viable), aff'd, 832 Fed. App'x. 766 (2d Cir. 2021).

Second, Plaintiff has been provided with more process than the Constitution requires, as he had ample notice of the DOHMH Order, and has been provided with a sufficient opportunity to be heard.  See O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005) (Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the opportunity to respond.") (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)).  Plaintiff appears to suggest that the requirements of Due Process are co-extensive with those of the Patrol Guide or Administrative Code, but "the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires."  Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990) (internal quotation marks and citation omitted).  Thus, as Judge Matsumoto correctly observed in

Garland, "at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution." Id. at *11. To that end, it is well settled that an employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." See Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991).

Here, the NYPD has more than provided the Constitutional minima. The NYPD has in place a robust process for accommodating employees seeking religious or medical exemptions to the vaccination requirement. See Dec. 9, 2021 Aff. of Michael Melocowsky (hereafter "Melocowsky Aff."), submitted in connection with PBA v. City of NY, Index. No. 160674/2021, Ex. G. Thus, Plaintiff may—and indeed has—avail himself of the NYPD's established process for seeking a reasonable accommodation to be exempted from the DOHMH Order. See NYPD Operations Order 79, Ex. D. Any employee who is granted a reasonable accommodation by the NYPD to be exempt from the DOHMH Order will be restored to NYPD payroll and provided with back pay for the period they were on leave without pay. Id. Additionally, employees who are denied a reasonable accommodation by the NYPD to be exempt from the DOHMH Order will be provided with an opportunity to appeal that determination. Id. Despite this process, Plaintiff is claiming he is not being provided with constitutionally sufficient due process. The Court should not countenance such hollow arguments.

Further, Plaintiff fails to allege municipal liability pursuant to Monell v. Dep't of Social Services, 436 U.S. 658 (1978). Under Monell, Plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." Simms v. City of New York, 480 F. App'x 627, 629 (2d Cir. 2012) (citation

and internal quotation marks omitted).  Fatal to Plaintiff's claim against the City is that the record does not contain any evidence of the last two elements such that it would support <u>Monell</u> liability. <u>See</u> <u>Monell</u>, 436 U.S. 658 (1978).

Here, while Plaintiff alleges the existence of a custom or policy, i.e., the Vaccine Mandate, he cannot demonstrate, and indeed the record is devoid of any evidence showing that he has been subjected to a denial of a constitutional right.  First, Plaintiff fails to allege any harm. <u>See</u> <u>supra</u>, Point I.  Second, Plaintiff fails to make a cognizable claim of any purported denial of a constitutional right.  <u>See</u> <u>supra</u>, Point II.  It follows that Plaintiff's attempt to hold the City liable for the DOHMH Order is facially insufficient.  Moreover, to the extent Plaintiff—in his efforts to challenge the City—alleges some sort of conspiracy to "compel [and] coerce" "group[s] of citizens," <u>see</u> Complaint, ECF Dkt. No. 5-1, ¶ 19, it is utterly futile absent a showing of any egregious behavior by the City or its employees that allegedly caused him harm, no less a violation of a constitutional protection.  <u>See</u> <u>King v. Metroplus Health Plan, Inc.</u>, 2021 U.S. App. LEXIS 36562, *3 (2d Cir. 2021) (affirming the district court's dismissal of pro se complaint for failure to satisfy the pleading standards of a § 1983 <u>Monell</u> claim); <u>see also</u> <u>Jallow v. City of New York</u>, 2021 U.S. App. LEXIS 32831, *4-6 (2d Cir. 2021).  Thus, Plaintiff has not made out a <u>Monell</u> claim against Defendants.

<div align="center">

**POINT IV**

**PLAINTIFF'S SUBSTANTIVE DUE PROCESS
CLAIM MUST BE DISMISSED FOR FAILURE
TO STATE A PLAUSIBLE CLAIM**

</div>

The liberty interests as embodied in the Due Process Clause of the Fourteenth Amendment encompass the freedom to "engage in the common occupations of life."  <u>See</u> <u>Bd of Regents v. Roth</u>, 408 U.S. 564, 572 (1972) (quoting <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399 (1923)).

<div align="center">23</div>

The freedom, however, is not unfettered and the protections granted under the Due Process Clause are not limitless.

Plaintiff's claim that the DOHMH Order violates his right to "refuse informed consent" is unsupported and thus fails to state a claim.  See Complaint, ECF Dkt. No. 5-1, ¶ 5; see generally id. at ¶¶ 7, 8, 9, 10, 11.  Equally unavailing is Plaintiff's separate claim that the DOHMH Order violates his right to bodily integrity.  See id. at ¶¶ 8, 187, 188, 246-47, 248.  Plaintiff's argument that the DOHMH vaccine order violates substantive due process is foreclosed by the Supreme Court's decision in Jacobson v. Massachusetts, 197 U.S. 11 (1905).  There, the plaintiff challenged Massachusetts's compulsory vaccination law under the Fourteenth Amendment.  The Supreme Court held that mandatory vaccination was within the State's police power.  Id. at 25-27.  The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population.  Id. at 38.  Importantly, the controlling authority of Jacobson was recently confirmed by Chief Justice Roberts in his concurring opinion in South Bay United Pentecostal, where he stated: that "Our Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect.  When those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad.  Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people."  South Bay United Pentecostal Church v Newsom, ____ U.S.____, 140 S. Ct. 1613, 1613-1614 (2021) (Roberts, C. J., concurring opinion)(citations omitted) (pre-COVID-19 vaccine case rejecting application for injunction to vacate California Executive order

limiting attendance at places of worship to 25% of building capacity or a maximum of 100 attendees).

The Second Circuit reaffirmed the continuing vitality of Jacobson in Phillips v. City of New York, 775 F.3d 538, 542 (2d Cir. 2015), wherein it held that New York's mandatory vaccine requirement did not violate substantive due process rights because the vaccinations were within the State's police power, and individual liberties did not overcome its judgment that such vaccination was in the interest of the population as a whole.  "Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago."  Id.; see also Caviezel v. Great Neck Pub. Schs., 500 F. App'x 16, 19 (2d Cir. 2012) (summary order) (rejecting substantive due process challenge to vaccination mandate based on Jacobson); see also Doe v. Zucker, 20-cv-840 (BKS/CFH), 2021 U.S. Dist. LEXIS 28937, *83 (N.D.N.Y. Feb. 17, 2021) (rejecting plaintiff's claim that New York State's medical exemptions to mandatory school immunization requirements violated substantive due process rights); see also C.F., 191 A.D. 3d at 69 (holding that the City of New York's measles vaccine mandate did not violate the due process rights secured by the New York State Constitution or the Fourteenth Amendment).

Indeed, courts in New York have recently held that the City's nearly identical vaccine mandate applicable to DOE employees was constitutional and did not implicate a substantive due process right.  See Maniscalco, No. 21-CV-5055 (BMC) (E.D.N.Y. Sep. 23, 2021) and MLC, Index No. 158368/2021 (Sup. Ct., N.Y. Cnty. September 29, 2021) (relying on Phillips, 775 F.3d at 542).  Since Jacobson, federal courts throughout the country have consistently held that vaccine mandates do not implicate a fundamental right and, accordingly, have applied rational basis review in determining the constitutionality of such mandates.  See, e.g., Klaassen v. Trs. of

Ind. Univ., 7 F.4th 592 (7th Cir.2021); see also Klaassenv.Trs. of Ind.Univ., No. 21 Civ. 238

(DRL), 2021 U.S. Dist. LEXIS 133300, *62-63 (N.D. Ind. July 18, 2021) (collecting cases)

(demonstrating "the consistent use of rational basis review to assess mandatory vaccination

measures," and, in light of "a century's worth of rulings," declining to "extend substantive due

process to recognize" a fundamental right to be free from COVID-19 vaccination requirements);

see also Roman Cath. Diocese of Brooklyn v. Cuomo, ___ U.S. ___, 141 S. Ct. 63, 67, 208 L. Ed.

2d 206 (2020) (Gorsuch, J., concurring) (explaining that Jacobson is "essentially . . . rational basis

review"); see also Dixon v. De Blasio, No. 21 Civ. 5090 (BMC), 2021 U.S. Dist. LEXIS 196287,

*8 (E.D.N.Y. Oct. 12, 2021) (rejecting the plaintiffs' appeal to the right to the "freedom of bodily

health and integrity").

   These recent decisions, together with a century's worth of federal jurisprudence,

demonstrate that the City may mandate vaccinations without violating the due process rights

secured by the Constitution.  Plaintiff offers no legal authority to the contrary—as none exists—

and instead, curiously cites to United States Supreme Court cases which considered fundamental

reproductive rights, and to cases concerning the refusal of medical treatment.  These matters,

having no nexus to municipal employment measures to support public health, are wholly

inapposite, and should be rejected by the Court.

   Finally, Plaintiff's contention that the DOHMH Order deprives him of his right to

choose his field of private employment was squarely rejected in both Maniscalco, supra, and, on

December 21, 2021, the New York State Supreme Court in Ansbro v. DeBlasio, Index No.

159738/2021 (Sup. Ct. N.Y. Co. December 20, 2021) (Perry, J.).  See Ansbro decision, annexed

to the Fowlkes Decl., as Ex. F.  In Maniscalco, Judge Cogan held that even though the vaccine

mandate applicable to DOE employees "may ultimately disqualify plaintiffs from employment in

their positions at public schools in New York City[,] the Due Process Clause secures the liberty to pursue a calling or occupation, and not the right to a specific job." Maniscalco, 2021 U.S. Dist. LEXIS 184971, at *6.  The plaintiffs in Maniscalco were not barred from pursuing a teaching career altogether; rather, unvaccinated teachers would have to pursue teaching opportunities outside of the New York City public school system.   Similarly, in Ansbro, the Petitioner representing FDNY employees, including firefighters, also argued that the DOHMH Order "infringes upon the[ir] right ... to engage in their profession and thus implicates a substantive due process violation."  See Ansbro decision, annexed to the Fowlkes Decl., as Ex. F, at 8.  The Court rejected that argument: "Petitioner's contention that the DOHMH Order infringes upon the right of UFA Members to engage in their profession and thus implicates a substantive due process violation, is not supported by established law.  Id. at 8.  As Judge Cogan noted in Maniscalco, "property interests related to employment are not among protected fundamental rights...[n]either is there a fundamental right to continued public employment."  Id. at *7.  The reasoning in these cases applies with equal force here.  Plaintiff, should he choose to remain unvaccinated, is free to pursue employment opportunities with other municipal police departments, or in private security companies, or firms that do not have a vaccine mandate.  For this reason, as in Maniscalco and Ansbro, Plaintiff is "not being denied [his] fundamental right to pursue [his] profession."  Id.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss, dismiss this action in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            January 19, 2022

<div style="margin-left: 40%">

**GEORGIA M. PESTANA**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-140
New York, New York 10007
(212) 356-2451
efowlkes@law.nyc.gov

By:      */s/ Eugenia Fowlkes*
         Eugenia Fowlkes
         Assistant Corporation Counsel

</div>

Bruce Rosenbaum,
Eugenia Fowlkes,
  Of Counsel.