UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANTHONY MARCIANO, and all other individuals similarly situated,

         Plaintiff\Petitioners

      -against-

BILL DE BLASIO, MAYOR OF THE CITY OF NEW YORK, in his official capacity; DAVE A. CHOCKSHI, COMMISSIONER OF HEALTH AND MENTAL HYGIENE, in his official capacity; DERMOT SHEA, POLICE COMMISSIONER, in his official capacity; THE NEW YORK CITY BOARD OF HEALTH; and THE CITY OF NEW YORK.

         Defendants\Respondents
------------------------------------------------------------------------x

CIV. NO. 1:21-cv-10752

**REPLY DECLARATION OF PATRICIA FINN IN SUPPORT OF TRO**

   **PATRICIA FINN**, attorney of record, declares that the following is true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746:

   1. I am counsel to Plaintiff-Petitioner ("Petitioner"), Anthony Marciano, in the above referenced action. I am fully familiar with the facts and circumstances of this case, and, respectfully, submit this Reply Declaration in Support of Petitioner's renewed request for a Temporary Restraining Order (TRO), preliminary injunction (PI), and, ultimately, a Declaratory Order striking down the employee vaccination orders that are causing Petitioner, and all others similarly situated, irreparable harm.

   2. Respondents' arguments in opposition to the TRO, completely distort PHL 206 (1)(l), and the Court of Appeals interpretation of PHL §206 (1)(l), in *Garcia,* as specifically prohibiting adult mandates in NYS. *Garcia v. New York City Dept. of Health & Mental Hygiene,* 31 N.Y.3d 601, 608, 81 N.Y.S.3d 827, 106 N.E.3d 1187 [2018]). The Court of Appeals in *Garcia* addressed the preemption argument in detail: "A local law will be preempted either

1

where there is a direct conflict with a state statute (conflict preemption) or where the legislature has indicated its intent to occupy the particular field (field preemption)."(*Id*. at 617.)  In *Garcia*, the Court of Appeals specifically found that Pub. Health Law § 206 (1) (l) does not authorize the mandatory vaccination of adults.  "Rather, the legislature intended to grant NYSDOH authority to oversee voluntary adult immunization programs, while ensuring that its grant of authority would not be construed as extending to the adoption of mandatory adult immunizations. *Id*. 620.

**STANDING**

3. Contrary to Respondent's view of the case law and statutes at issue here, it is illegal to mandate an adult vaccination in NYC, under applicable state law and federal laws. See *PHL §2120, 10 NYCRR 2.13, PHB Article 24 (A), and 21 U.S.C. 360bbb-3, Food and Drug Cosmetic Act, Emergency Use Authorizations (EUA).*

4. Respondents are overlooking the City has already conceded this Court's jurisdiction in removal from State Court and are overlooking that Petitioner has already established standing in Supreme Court on his state law claims, which apply here, on the same grounds, giving him standing in Federal Court.  It is the defendant who is confusing standing and jurisdiction, as well as, mischaracterizing the statutes, and the relevant case law applicable to this controversy, in an effort, to deprive Petitioner his day in Court.  Id. Thus, Petitioner has demonstrated he has standing, and this Court has jurisdiction to proceed with his claim.

5. In their list of cases cited as authority for dismissing this case, none of those cases apply here because they involved First Amendment claims, EEOC claims, or collective bargaining agreements, unlike this case alleging a Separation of Powers claim to an alleged, illegal vaccination mandate.  Those cases cited presumed the legality of the mandate, Petitioner here does not. Respondents also omits reference to a recent precedential case from the United States Supreme Court in *Nat'l Fed'n of Indep. Bus. (NFIB) v. Dep't of Labor*, No. 21A244 (Jan. 13, 2022), that struck

down a similar employee mandates on February 7, 2022, as violating the Separation of Powers rule, applicable to the claims in this case raised by Petitioner. Id.

6. The Supreme Court's determination is *NFIB*, directly applies here, and is binding on this Court. For example, one need only swap out the defendant "President Biden", for the defendant "Mayor of New York City", and replace the words "OSHA regulations" with "vaccine orders" to see how *NFIB* prohibits a public health mandate from being converted to workplace mandate through regulations. Id. The precedential value of *NFIB* is binding on this Court and warrants the TRO\PI.

### **EMERGENCY USE AUTHORIZATIONS (EUA)**

7. Petitioner is suffering irreparable harm, facing termination of his job under the crushing weight of an unauthorized Emergency Use Authorized (EUA) vaccination mandate, which is preempted by federal law from being mandated on anybody without informed consent. *21 U.S.C. 360bbb-3, Food and Drug Cosmetic Act, Emergency Use Authorizations (EUA).EUA Authorizations.* By its very definition, because the only available Covid 19 vaccination is unlicensed, and an unapproved drug by Food and Drug Administration (FDA), an EUA drug cannot be mandated, under the pretext of an emergency, and a newly created workplace regulation without legislative authority. Id.

8. Petitioner is entitled to a TRO because he is suffering irreparable harm in that his rights to refuse an EUA vaccination, and the denial of his statutory protections permitting him to refuse, are being threatened causing him irreparable harm. The so-called three (3) licensed vaccines, listed as alternatives by Respondents to the EUA shots, are simply not being mass produced or manufactured for global consumption. They are licenses with no available products. Upon information and belief, none of the licensed vaccines mentioned by Respondents as EUA substitutes are currently available in the United States.

9. Federal law preempts mandating EUA vaccinations as an alternative to a licensed vaccination, requiring Petitioner to divulge his personal religious beliefs for others to judge his sincerity, lest he lose his job, or the alternative for him, is to submit to an unauthorized, EUA vaccination, prohibited by PHL §206 (1)(l), from being mandated on adults in NYS.  This will never change whether his exemption is approved or not.

10. Further, these rights need only be threatened to constitute irreparable harm. In *Elrod* v *Burns,* the Supreme Court affirmed the Court of Appeals decision to grant a preliminary injunction where individuals were merely threatened with dismissal based on their lack of patronage for the political party in power. The Court noted, [a]t the time a preliminary injunction was sought in the District Court, one of the respondents was only threatened with discharge. *Elrod v Burns*, 427 U.S. 347 (1976). Moreover, the chances of Petitioner's religious exemption being approved on appeal, are less than 3%,  given the City's published rejection rate for religious exemptions, which is a far greater chance of him being denied a religious exemption than dying from Covid 19, or any hypothetical chance of him spreading the virus to others.

11. If the vaccine orders at issue were legislatively, authorized, legal mandates this would be a different case entirely. The *police power* explained in the 1905 landmark, vaccine-refusal case *Jacobson v  Massachusetts, 197 US 11 (1905),* if applied within Constitutional limits, would end the claim here and now, but that is if, and, only if, the mandate has legislative underpinning, and is lawfully enacted in response to a true public health "emergency."  There is no emergency here and no authority to  mandate a vaccination by the Mayor.

12. The legislature can and has spoken in the *Novel Coronavirus, Covid 19* legislation, in Title 8, Chapter 45, Article  21, enacted January 1, 2021, and excluded EUA vaccinations from being mandated because of federal preemption in the authorizing legislation. Also see, PHL §2120, (1-5),

*Communicable Diseases;* PHL Article 24 (A), *Protection of Human Subjects*, and *21 U.S.C. 360bbb-3, Food and Drug Cosmetic Act, Emergency Use Authorizations (EUA).*

### COURT OF APPEALS PRECEDENT

13.     Respondents ask this Court to disregard the Court of Appeals precedent in *Boreali, NY Hispanic Coalition*, and *Garcia*, in favor of the Appellate Division's ruling in *C.F. v New York City Dept. of Health & Mental Hygiene*, 191 AD3d 52, 56-57 [2d Dept 2020], a case that involved a nuisance ordinance that was mooted before it was started, and if it had been appealed to the Court of Appeals likely would have been reversed.  See *Borealiv Axelrod*, 71 N.Y.2d 1 (1987) at 9; ( "striking the proper balance among health concerns, cost, and privacy interests, however, is a uniquely legislative function."); *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v. New York City Department of Health and Mental Hygiene,* 23 NY3d 681 (2014)(holding that the language that gave NYC Board of Health jurisdiction over all issues that extend to the Dept of Health was intended to limit the Board's ability to overstep into the legislature's domain of law-making); *Garcia v. New York City Dept. of Health & Mental Hygiene,* 31 N.Y.3d 601, 608, 81 N.Y.S.3d 827, 106 N.E.3d 1187 [2018]). "The constitutional principle of separation of powers requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" ( *Matter of Dry Harbor Nursing Home v. Zucker,* 175 A.D.3d 770, 772–773, 108 N.Y.S.3d 467 [2019] [internal quotation marks, brackets and citations omitted] ). *Roman Catholic Diocese of Albany v. Vullo*, 185 A.D.3d 11, 18 (N.Y. App. Div. 2021).

14.     In *C.F.*, the Second Department likely would have been overturned on appeal because the Appellate Division also failed to recognize PHL §2120, *Communicable Diseases*, and 10 NYCRR 2.13, *Isolation and Quarantine*, require the Board of Health obtain a Judicial Order of

Quarantine to impose an involuntary drug on any person, outside of school required vaccinations in PHL §2164, §2165, that could not be imposed by a nuisance ordinance.

15. Even if the Court were to find some stretch of delegated authority to the Mayor, to mandate a vaccination, outside of school related vaccinations authorized in PHL §2164, and §2165, the vaccine orders themselves are *ultra vires* because they are mandating an EUA vaccination that cannot be mandated without uncoerced, informed consent. See *PHL §2120, 10 NYCRR 2.13, PHB Article 24 (A), and 21 U.S.C. 360bbb-3, Food and Drug Cosmetic Act, Emergency Use Authorizations (EUA). Also see Jacobson v Massachusetts, 197 U.S. 11 at 31, (1905).* )( anticipating "a plain, palpable invasion of rights secured by the fundamental law," and in such cases, the Supreme Court considered it "the duty of the courts to so adjudge.")

16. Further, the vaccine orders at issue are arbitrary and capricious because they fail to take into account natural immunity, and the medical risks associated with vaccinating an individual with natural immunity to Covid 19, and the real possibility of experiencing a hyperimmune response when immunity exists and a person is unnecessarily vaccinated, hence the reason for the Judicial Order of Quarantine in PHL §2120, (3). If injured by an EUA vaccination, an individual is left with to no recourse to obtain compensation for any injury sustained because informed consent is applied to its use, and any liability for injury is preempted as a Covid 19 Countermeasure. *Parker v. St. Lawrence Cnty. Pub. Health Dep't*, 102 A.D.3d 140 (N.Y. App. Div. 2012)

17. Plaintiff is further entitled to the TRO because this case involves alleged violations of fundamental liberty interests, and his substantive and due process rights to the statutory protections, that permit him to refuse an unlicensed drug (vaccine), unless the local health department first petitions the Supreme Court for a Judicial Order of Quarantine per PHL §2120 (1-5), *Communicable Diseases*, and 10 NYCRR 2.13, *isolation and quarantine*, amended February 14, 2022. Under existing state law and regulations, PHL §2120 and Part 2.13, require the local health department to

petition Supreme Court, affording Petitioner Notice, assignment of Counsel, and broad due process protections.

18.     Alternatively, PHL §2120, also provides the targeted individual for an involuntary drug (vaccination) or treatment, can also petition Supreme Court through an Article 78 proceeding, under which PHL §2120, affords the targeted individual for an involuntary drug, treatment, or restraint, to have Notice, appointment of counsel.

19.     PHL §2120 (3), requires for the local health department to demonstrate the drug (vaccine) is the "least restrictive alternative" for achieving a legitimate public health goal when an individual is infected or suspected of infection. *O'Connor v. Donaldson*, 422 U.S. 563, ,975), and the "substantial government interest" cannot be achieved by less drastic means, *i.e.*, the "least restrictive alternative." *Shelton v. Tucker*, 364 U.S. 479, 488 (1960); *City of New York v. Doe*, 205 A.D.2d 469 (1st Dep't 1994) [upholding involuntary isolation of TB patient]; *City of New York v. Antoinette R*., 165 Misc. 2d 1014 (Sup. Ct., Queens Co., 1995).

20.     Petitioner has filed an Article 78 proceeding, giving him standing to continue his claim in this Court under PHL §2120 (1-5), *Communicable Diseases*, 10 NYCRR 2.13, *isolation and quarantine,* shifting the burden to the Board of Health to prove he is infected or suspected of infection, and the vaccination is the least restrictive means for achieving the public health goal. There is a balancing required by the legislature between a compelling government interest versus a fundamental personal right and, where there is a communicable disease health threat, that balance may well shift to the government. See *Eichner v. Dillon*, 73 A.D.2d 431, 455 (2d Dep't 1980).

21.     Moreover, the City's Board of Health knows it cannot mandate an EUA vaccination without a Judicial Order of Quarantine, and that is why this mandate is being coerced through an emergency executive order by the Mayor, and his Department Heads, and not the Board of Health

7

compliance with PHL §2120, that provides for a Judicial Order of Quarantine to impose an involuntary drug.

### STRICT SCRUTINY

22. Today, an unauthorized EUA, experimental vaccination would require at least intermediate scrutiny, if not strict scrutiny, because this State action is unauthorized by the legislature, and imposes upon fundamental liberty interests. *City of Cleburne Texas v. Cleburne Living Center*, 473 U.S. 432 (1985). To view the vaccination orders solely through the lens of the *police power,* without taking into account Plaintiffs' fundamental liberty interests, is to look at one side of a two-faced coin. Because the challenged restrictions are not "neutral" they must satisfy "strict scrutiny," which requires that they be "narrowly tailored" to serve a "compelling" state interest. *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) *at 546*; *Roman Catholic Diocese of Brooklyn v. Cuomo*, No. 20A87 (Nov. 25, 2020) *at 4.* [brackets inserted]; see, *Griswold v. Connecticut*, 381 U.S. 479, 497 (1965) (citing *McLaughlin v. Florida*, 379 U.S. 184 (1964)).

23. In the 1990's, the Supreme Court set limits on state interference with medical autonomy in three landmark cases: *Cruzan v. Dir., Mo. Dept't of Health*, 497 U.S. 261 (1990), *Washington v. Harper*, 494 U.S. 210 (1990) and *Washington v. Glucksberg*, 521 U.S. 702 (1997). In *Cruzan* found that the "freedom from unwanted medical attention is unquestionably among those principles 'so rooted in the traditions and conscience of our people as to be ranked as fundamental'". *Cruzan* at 305 (quoting *Snyder v. Mass.*, 291 U.S. 97, 105 (1934)).

### ARGUMENT

**LIKELIHOOD OF SUCCESS**

24. Where, as here, a TRO\PI will affect government action ostensibly taken in the public interest, the moving party must demonstrate: (1) a likelihood of success on the merits; (2)

irreparable harm absent injunctive relief; (3) public interest weighing in favor of granting the injunction. *Agudath Israel of Am. v. Cuomo,* 983 F.3d 620, 631 (2nd Cir. 2020). As set forth *infra,* Plaintiffs meet the standards and should be granted the required relief.

25. Applying state law standards, with respect to the first requirement for granting injunctive relief—likelihood of success on the merits, — "[I]t is enough if the moving party makes a *prima facie* showing of his right to relief; the actual proving of his case should be left to the full hearing on the merits." *Swope v Melian*, 35 A.D.2d 981 [2d Dept. 1970]).

**IRREPARABLE HARM**

26. Petitioners and all others similarly situated will suffer "the loss of constitutional freedoms 'for even minimal periods of time … unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, Slip Op. at *19 (5th Cir. Nov. 12, 2021) (*quoting, Elrod v. Burns*, 427 U.S. 347, 373 (1976). Courts will presume that a movant has established irreparable harm in the absence of injunctive relief when the movant's claim involves the alleged deprivation of a constitutional right, as do Petitioners' claims here. *See, Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). Here, in New York the legislature has already expressly stated in three (3) statutes, *Novel Coronavirus, Covid 19 Legislations, Title 8, Chapter 45, Article 24'* PHL §2120, *Communicable diseases; control of dangerous careless patients; commitment;* PHL Article 24-A*, Protection of Human Subjects,* that required the imposition of an experimental, unlicensed drug, requires *informed consent or a Court Order.*

27. Thus, the vaccine orders at issue in this case violate the Petitioner's rights of equal protection and due process of law to their statutory protections in PHL §206(1)(l), and PHL § 2120, and his Ninth and Fourteenth Amendment rights protecting fundamental liberty interests and Petitioner's right bodily integrity. See, e.g., 61 AM. JUR. 2D Physicians, Surgeons,

Etc. § 175 (2010); *Schloendorff v. Society of New York Hospital*, 211 N.Y. 125, 105 N.E. 92 (1914),(the Court held the operation to which the plaintiff did not consent constituted medical battery). Requiring a foreign substance to be injected into the body implicates privacy interests as well as the fundamental right to bodily integrity. *Rivers v. Katz*, 67 N.Y.2d 485, 494 (1986) ("fundamental right to make decisions concerning one's own body").

## BALANCING OF THE EQUITIES

28. The balancing of equities requires the court to find "that the harm to the plaintiff without the injunction will be greater than the harm to the defendant if the injunction is granted." Vincent C. Alexander, Practice Commentary, McKinney's Cons Laws of NY, CPLR C6301:2, cf. *Nassau Roofing & Sheet Metal Co. v Facilities Devp't Corp*., 70 A.D.2d 1021 (3d Dept. 1979). Where there is "no evidence to suggest [Respondent] will be harmed in the interim" and the first two prongs of the standard have been satisfied, a preliminary injunction is properly granted. *Park Briar Assoc. v Park Briar Owners, Inc*., 182 A.D.2d 685, 687 (2d Dept. 1992). The *status quo* to be preserved here is period before the vaccine orders went into effect four months ago, not after. It is well-settled that there is no public interest in preserving an unconstitutional governmental order. See, e.g., *Gordon v. Holder,* 721 F.3d 638, 653 (D.C. Cir. 2013) (recognizing that the "enforcement of an unconstitutional law is always contrary to the public interest").

WHEREFORE, based on the foregoing, Petitioner's relief for a TRO should be granted.

DATED: 2 23 21                              *s/Patricia Finn, Esq.*
                                            *Attorney for Petitioner*